Joseph D. PATTON and Constance M. Patton

v.

Oscar M. JONAS, Collector.

No. 12018.

United States Court of Appeals Seventh Circuit.

Nov. 5, 1957.

Richard R. Teschner, Dale L. Sorden, and Laurence C. Hammond, Jr., Milwaukee, Wis., Lines, Spooner & Quarles, Milwaukee, Wis., of counsel, for appellants.

Charles K. Rice, Asst. Atty. Gen., Karl Schmeidler, Attorney, Tax Division, U. S. Department of Justice, Washington, D. C., Edward G. Minor, U. S. Atty., Milwaukee, Wis., Ellis N. Slack, A. F. Prescott, Fred E. Youngman, Attorneys, Department of Justice, Washington, D. C., Francis L. McElligott, Asst. U. S. Atty., Milwaukee, Wis., for appellee.

Before DUFFY, Chief Judge, and LINDLEY and HASTINGS, Circuit Judges.

LINDLEY, Circuit Judge.

This is an appeal·from a determination by the district court that certain payments made by plaintiff taxpayer did not constitute "interest paid * * * on indebtedness * * *" within the meaning of Section 23(b) of the Internal Revenue Code of 1939. 26 U.S.C.A. § 23 (b). This, the only problem with which we are confronted, entails a construction on our part of a contract referred to herein as the Lodgewood-Patton agreement, in order that we may determine whether a debtor-creditor relationship was created thereby. A brief statement of the facts as stipulated follows.

In March, 1937, plaintiff, Joseph Patton, entered into an agreement with one George F. O'Neil, whereby plaintiff procured an option to purchase 80% to 100% of the preferred stock of O'Neil-Duro Company and 1649 of the 2536 shares of its common stock for a stipulated sum. In an attempt to finance in part the purchase price of these shares, plaintiff sought to obtain a loan from the Lodgewood Company, a family holding corporation in which he was a stockholder, director, and vice-president. His sister, a substantial shareholder in Lodgewood, objected to the loan. In order to circumvent this obstacle, a resolution was adopted by the board of directors on April 16, 1937 wherein it was provided that Lodgewood would invest $125,000 in the stock of O'Neil-Duro Company, in the event an agreement could be consummated wherein plaintiff would guarantee to Lodgewood "an income from said stock at a rate not less than the average rate of income of this corporation from its other investments", and in which he would agree to indemnify Lodgewood against any loss of principal resulting from the purchase. The resolution further provided that plaintiff would be granted an option to acquire the O'Neil-Duro shares from Lodgewood at its cost, at any time up to and including 60 days after distribution of the assets of a trust estate created by the will of plaintiff's father. Under the terms

of that will, plaintiff had a vested remainder in one-third of the corpus of the trust subject to a life estate therein of the wife of the testator.

Pursuant to the resolution, the contract known as the Lodgewood-Patton agreement, was executed by the parties on May 25, 1937, complying substantially with the terms of the resolution. In substance, it provided that plaintiff would assure Lodgewood of an annual income in an amount not less than 4½% of the cost of the stock held during the year. This income was to be derived from dividends received on the shares and any dividends paid in excess of the 4½% guaranteed return were to be credited against the sales price of the stock to plaintiff. However, in the event that the dividend return fell below 4½%, the agreement provided that taxpayer would make up the deficiency. Taxpayer also agreed to indemnify Lodgewood against any loss of the principal of its investment. In this regard, the contract provided that, in the event of a liquidation of the O'Neil-Duro Company, or an involuntary conveyance of the stock by Lodgewood, or a voluntary sale with taxpayer's consent, plaintiff was bound, upon demand of Lodgewood, to deliver to it his negotiable promissory note in the amount of any deficiency between the sum realized on the sale or liquidation and Lodgewood's initial investment, plus any deficiency in earnings. The note was to be payable on or before 60 days after the first distribution to Patton from the trust under the will of his father and to bear interest at the contractual rate. The agreement further provided that in the event plaintiff failed to purchase all of the O'Neil-Duro stock from Lodgewood on or before 60 days after the first distribution to Patton of the assets from the trust estate created by his father's will "*he will at the request of Lodgewood purchase all or any part of said stock then held by Lodgewood * * *.*" (Emphasis supplied.)

On the date of the agreement, plaintiff exercised his option to acquire the stock of O'Neil-Duro by purchasing in his own name 50 shares of preferred and 1076 shares of common stock, and Lodgewood, acting pursuant to plaintiff's option, purchased 800 shares of preferred and 875 shares of common stock, all of which were registered in its name.

During the period from 1937 to 1948, the dividends received on the O'Neil-Duro stock were substantially less than the guaranteed rate provided in the Lodgewood-Patton agreement. (The rate of 4½% was reduced to 3% on January 1, 1946.) Thus, in May, 1948, following the distribution to plaintiff of the assets of the trust created by his father's will, the income deficiency amounted to $46,-276.75. On May 27, 1948, plaintiff acquired title to all of the O'Neil-Duro stock held by Lodgewood by paying the contract price plus $37,605.63 covering in part the deficiency in the guaranteed income. The balance of the deficit, $8,-671.12, he paid February 10, 1949. Plaintiff seeks to deduct these "deficiency" payments as "interest paid * * * on indebtedness * * *."

As all the facts were stipulated, we are in as advantageous a position to determine the true character of the agreement as was the trial court. And, in considering the nature of the transaction, we adhere to the basic theory of construction, so often invoked, to the effect that it is necessary to look to the substance rather than the form of the transaction in determining the tax consequences. Lucas v. Earl, 281 U.S. 111, 114, 115, 50 S.Ct. 241, 74 L.Ed. 731. As pointed out by the Supreme Court, in Griffiths v. Helvering, Commissioner, 308 U.S. 355, 357, 60 S.Ct. 277, 278, 84 L.Ed. 319: "We cannot too often reiterate that 'taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed— the actual benefit for which the tax is paid' * * *." And, as we stated in Moore v. Commissioner of Internal Revenue, 7 Cir., 124 F.2d 991, 993: "Tax statutes deal with realities and not fiction or fine-spun legalistic distinctions."

The primary question is whether the Lodgewood-Patton agree-

ment created an "indebtedness" within the meaning of Section 23(b) of the Internal Revenue Code. In examining the substance of the agreement, certain features are self-evident. First, it purported to grant plaintiff a conventional option to purchase stock from Lodgewood. However, it was further provided that he was obligated to purchase the stock at the *request* of Lodgewood. Even though, theoretically, at the time the contract was executed, there was an element of uncertainty as to whether plaintiff would ever be called upon to perform this duty, nevertheless, at all events, he was obligated to purchase the shares if Lodgewood so demanded. Obviously, the mere fact that an obligee may never exercise his right does not in the least detract from the binding effect of an obligation to perform. In addition, the term "request" as used by the parties is not discretionary in character, but rather imports a duty to comply. See Colton v. Colton, 127 U.S. 300, 8 S.Ct. 1164, 32 L. Ed. 138; In re Byers' Estate, 186 Pa. 404, 40 A. 524; Landon v. Huitfeldt, 41 N.J.Eq. 267, 3 A. 882. Other important features of the agreement include the guarantee of a fixed rate of return on the investment and insurance against loss of principal.

In determining the true character of the relationship created by this transaction, the formal embodiment of the agreement must not be considered in isolation, but rather viewed in relation to the preliminary negotiations of the parties. It is emphasized by the government that Lodgewood received title to the stock directly in return for a consideration which it advanced on its own behalf. And, in isolation, likewise, the Lodgewood-Patton agreement provided merely a method whereby plaintiff could purchase the stock in his own behalf. However, when all the transactions and negotiations are considered together obviously much more than a simple purchase and sale agreement was involved. It must be remembered that plaintiff's ultimate purpose was to take personal advantage of his option to purchase the O'Neil-Duro stock. Being unable, at the time, to finance the entire purchase himself, he approached the Lodgewood Company for a direct loan. Failing to obtain a loan of the funds with which to purchase the stock, a more devious plan was employed. By the agreement plaintiff ultimately obtained the entire benefit of his option to purchase the shares.

We think that, when the extraneous matters which tend to cloud the issues before us are brushed aside, the transaction in question is nothing more than a typical secured loan arrangement, whereby only the ordinary debtor-creditor relationship was created. This conclusion is based on a slight variation of the familiar maxim that where a deed, absolute on its face, is coupled with an agreement to reconvey upon payment of a stipulated sum, the transaction is ordinarily nothing more than a mortgage. Rogers v. Burrus, 53 Wis. 530, 9 N.W. 786; Cumps v. Kiyo, 104 Wis. 656, 80 N.W. 937; Wells v. Scanlan, 124 Wis. 229, 102 N.W. 571. Obviously, when the entire arrangement is kept in mind, Lodgewood was merely a conduit in plaintiff's chain of title and, in essence, did nothing more than advance the necessary funds for the stock purchase in return for a defeasible title thereto. Lodgewood's real economic interest in the stock contained all the essential ingredients of the ordinary security interest incident to the normal debtor-creditor relationship, as distinguished from those involved in a stock purchase.

When the income feature of the agreement is examined, although cast in the form of dividends received, the element of uncertainty inherent in the normal stock investment was absent. Rather, a fixed rate of return was assured. In addition, the agreement provided for safety of principal, again a feature of the ordinary loan transaction as distinguished from a stock purchase where the principal is subject to the fluctuations of the market place. Finally, the provision imposing the obligation upon plaintiff to purchase the stock at the request of Lodgewood, emphasizes the transitory

nature of Lodgewood's interest in the shares. We conclude that in a real economic sense this transaction amounted to nothing more than the creation of a debtor-creditor relationship wherein the promise of defendant to repay was secured by the O'Neil-Duro stock.

Inasmuch as we have determined that the agreement created a relationship of "indebtedness", there is little difficulty encountered in concluding further that the payments made by plaintiff constituted "interest" on an indebtedness. An analogy may be drawn to a situation where stock ownership is transferred directly from a debtor to a creditor solely for security purposes pursuant to an agreement wherein the interest on the loan is to be paid from the dividends received on the stock with any possible deficit to be compensated for by direct cash payments by the debtor. Obviously, the dividends constitute interest on the loan as would any deficiency payment made by such a debtor. Clearly, there is no distinction between that situation and the one with which we are here confronted.

The judgment is reversed, with directions to proceed in accord with this opinion.