Jules R. GREEN et al., Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

COMMISSIONER OF INTERNAL REVENUE, Petitioner.

v.

ESTATE of Frederick A. SMITH, Deceased et al., Respondents.
(Consolidated)

Nos. 15643, 15644.

United States Court of Appeals
Seventh Circuit.

Oct. 21, 1966.

Rehearing Denied Nov. 28, 1966.

———◆———

Milton A. Levenfeld, Chicago, Ill., for petitioners.

Mitchell Rogovin, Asst. Atty. Gen., Tax Division, Dept. of Justice, Meyer Rothwacks, Harold C. Wilkenfeld, Howard J. Feldman, Attys., Dept. of Justice, Washington, D. C., for respondent C. I. R.

Joseph M. Solon, Chicago, Ill., for Estate of Frederick Smith and Lenore F. Smith, Milton J. Smith, Chicago, Ill., of counsel.

Before SCHNACKENBERG, FAIRCHILD and CUMMINGS, Circuit Judges.

FAIRCHILD, Circuit Judge.

Taxpayers Jules and Harold Green and their wives reported, for 1956, $65,000 (rounded figure) as a capital gain on the sale of stock in 20 Cedar Street, Inc. The commissioner determined and the tax court found that this $65,000 was interest income. Taxpayer Frederick Smith and his wife claimed the same $65,000 as deductible interest paid, and the tax court found in their favor. The Greens seek review of the decision in their case, and the commissioner seeks review of the decision in Smith's case, so as to achieve consistent results. Mr. Smith is deceased.

In 1955 Smith, an attorney, decided to try to acquire all the stock of 20 Cedar Street, Inc., a corporation which owned an apartment house which Smith then managed. He owned a few shares, was executor of the Joseph Seranella estate which owned the great majority, and was entitled to share in the estate as a legatee. He made arrangements with the other beneficiaries in the estate to acquire their interests, and planned ultimately to liquidate the corporation and acquire title to the building. In early 1956, he obtained a commitment from a life insurance company to lend $750,000, secured by a first mortgage on the building.

Smith needed cash with which to acquire the interests of the Seranella beneficiaries, and the stock of others, but was unsuccessful in several attempts to borrow. He ultimately dealt with Harold and Jules Green, attorneys whom he had known for many years.

On May 3, 1956, 12,096 shares, registered in the name of Anthony Kogut, Smith's partner, and nominee for the estate and various stockholders, were transferred to the Greens, along with a $62,000 note of the corporation, payable to Smith. The Greens borrowed $325,000 from a bank and paid it to Kogut. Kogut made the agreed payments to the Seranella beneficiaries, and turned the balance over to Smith. Shortly thereafter Harold Green gave Smith a memorandum, dated May 3 and reading as follows:

"I hold 12096 shares of stock of 20 Cedar Street Inc. an Illinois corporation which I will deliver to you within 12 months from this date upon your pay-

ment to me in cash the sum of three hundred ninety thousand dollars ($390000.-00)"

Smith obtained Greens' proxy and ultimately liquidated the corporation. Title to the apartment building was vested in a bank as trustee for Smith and his wife, the new mortgage loan was obtained, and the old mortgage paid. On November 30, 1956, Smith paid $390,000 to the Greens out of the net proceeds of the loan. The Greens endorsed and delivered to him the certificate for 12,096 shares of stock and the $62,000 note.

■ The issue is whether the May 3 transaction created a debtor-creditor relationship, with the stock being transferred as security for the obligation to repay the loan with $65,000 interest, or whether it was genuinely a purchase of stock for $325,000, subject to an option to repurchase which Smith was not certain to exercise and had no real obligation to exercise.

Harold Green testified that he refused to make a loan, but agreed to buy and give an option to repurchase, insisting on that type of transaction so that if he made a profit it would be a capital gain. The transfer of the stock, unconditionally as far as the documents show, the memorandum promising to deliver the stock upon payment, and the absence of a written promise to pay are consistent with the purchase version. On the other hand it should be noticed that in the memorandum, Green claims only to "hold" the stock, and his written promise to "deliver" it upon payment is also consistent with the pledge of stock as security.

Smith's testimony, of course, was not available. Kogut testified that he was present with Smith and the Greens on May 3. Although some of his answers are in form which suggest he was stating conclusions, the context indicates he was endeavoring to relate the substance of what he heard. According to Kogut, one of the Greens said that because of the usury laws it should be handled in such a way as not to appear to be a straight loan; the actual agreement was a straight loan, and Smith was obligated to pay $390,000 within a year irrespective of the value of the security.

Harold Green wrote to Smith during the summer of 1956. The choice of language in some instances suggests that the transaction was truly a loan. For example, Harold told Smith in August that the bank from which the Greens borrowed the money had raised the interest rate when renewing the loan, but he assured Smith that "a bargain is a bargain" and "your cost is fixed no matter what my cost is." In June Harold acknowledged Smith's desire not to consummate the transaction before six months because of income tax reasons, a concept which makes sense if Smith was the owner of the stock at that time, rather than the holder of an option to purchase.

■ We are to look to the substance rather than the form of a transaction in determining the tax consequences. Patton v. Jonas (7th Cir. 1957), 249 F.2d 375. We conclude that the decisions of the tax court were not clearly erroneous, and they are

Affirmed.