62 F.3d 1425
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Winston BONTRAGER, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
William A. FISHER, Defendant-Appellant.
 Nos. 94-30274, 94-30290.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 19, 1995.
Decided Aug. 8, 1995.
 
 Before: FARRIS, NOONAN, and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Bontrager appeals (1) the denial of his motion to withdraw guilty plea and (2) his sentence for conspiracy to commit wire fraud and to defraud the United States in violation of 18 U.S.C. Secs. 371, 1343, and 1956. Fisher appeals his sentence imposed following a guilty plea on similar charges. We have jurisdiction under 28 U.S.C. Sec. 1291. We affirm.
 
 I. Motion to Withdraw Guilty Plea
 
 3
 Bontrager contends that the district court erred in denying his motion to withdraw his guilty plea. He argues that his plea agreement was void because it purported to do two things it could not: (1) limit his guilty plea to only a portion of Count 1; and (2) preclude the court from applying the money-laundering guideline.
 
 
 4
 A district court's denial of a motion to withdraw a guilty plea is reviewed for an abuse of discretion. United States v. Alber, 56 F.3d 1106, 1108 (9th Cir. 1995). A defendant has no right to withdraw a guilty plea, and may do so only upon establishing a fair and just reason. Id.; Fed. R. Crim. P. 32(d). Whether to allow withdrawal is within the sound discretion of the district court. United States v. Signori, 844 F.2d 635, 637 (9th Cir. 1988).
 
 
 5
 The parties have not cited, nor did we find, any federal case law squarely addressing the question of whether a defendant may plead guilty to only a portion of a charged count.[1] We need not reach the issue. Even if the plea was improper, reversal is not appropriate. The district court's error, if any, in accepting the plea to a portion of count 1 was cured by its striking of the money-laundering prong prior to sentencing. Nothing proscribed by the plea agreement occurred at sentencing.
 
 
 6
 Bontrager's plea agreement purported to prevent the district court from applying the Guideline ranges for money laundering. Bontrager contends that the plea agreement was therefore illegal. As with the plea issue, any defect in the plea agreement was cured by the court's striking of the money laundering portion of count 1 prior to sentencing.
 
 
 7
 II. Enhancements for Failure to Report Income
 
 
 8
 The district court added two points to each defendant's base offense level under Guideline Section 2T1.1. That section mandates a two-level enhancement "[i]f the defendant failed to report or correctly identify the source of income exceeding $10,000 in any year from criminal activity." The district court found that on their 1988 returns, each defendant failed to report income in excess of $10,000 derived from the fraudulent land sales to the Retirement Fund. Bontrager and Fisher each contest the enhancement. They argue that: (1) they were not obligated to report proceeds from the land sales as income on their 1988 returns; and (2) the land sales were not criminal activities. Neither argument has merit.
 
 A. Obligation to Report
 
 9
 Whether the district court properly determined that defendants had an obligation to report profits from the sales to the Retirement Fund is a question of law reviewed de novo. United States v. Buenrostro-Torres, 24 F.3d 1173, 1174 (9th Cir. 1994). Underlying factual determinations are reviewed for clear error. Id.
 
 
 10
 Bontrager and Fisher contend that because the sales agreements with the Retirement Fund granted them an option to repurchase the properties for a fixed sum, the transactions were essentially loans, not sales. We reject the argument.
 
 
 11
 Defendants correctly point out that real estate transactions that appear to be sales may actually constitute loans for income tax purposes. See Blake v. Commissioner, 8 T.C. 546 (1947) (acq.); 2 Boris I. Bittker & Lawrence Lokken, Federal Taxation of Income, Estates and Gifts, p 40.7.1 (2d ed. 1990). The substance of the transaction, not the form, determines whether it is a sale or a loan. Green v. Commissioner, 367 F.2d 823, 825 (7th Cir. 1966). Consequently, transactions memorialized by sales agreements or consummated by execution of deeds are not necessarily considered sales for tax purposes.
 
 
 12
 Several courts have treated sales coupled with options to repurchase as loans for tax reporting purposes. Green, 367 F.2d at 823-25 (sale of stock accompanied by repurchase option treated as loan); Patton v. Jonas, 249 F.2d 375 (7th Cir. 1957) (obligation to purchase coupled with option created indebtedness given business context); Blake, 8 T.C. at 552-55 (quitclaim with option to repurchase constituted mortgage).[2] A critical consideration, however, is the intent and understanding of the parties.[3]
 
 
 13
 No record evidence indicates that any party, including defendants, viewed the land sales to the Retirement Fund as loans. In fact, the record supports the contrary conclusion. No loan documents were prepared. Each sales contract between VPI and the Retirement Fund stated that the parties "agree[] that [the] repurchase option shall not constitute a financing device and Seller shall have no equity interest, rights of redemption, or other rights to the property after the closing ... other than solely as optionee." No record evidence suggests that the Retirement Fund or the defendants viewed the transactions as loans, not sales. The district court properly concluded that defendants had an obligation to report proceeds from the land sales to the Retirement Fund on their 1988 tax returns.
 
 B. Criminal Activity
 
 14
 The district court's determination that defendants' conduct toward the Retirement Fund transactions was "criminal activity" is a question of law reviewed de novo. United States v. Ford, 989 F.2d 347 (9th Cir. 1993). Under Sec. 2T1.3(b)(1), "criminal activity" is any conduct constituting a criminal offense under federal, state, or local law. Id. at 350.
 
 
 15
 Defendants purchased the land from the original landowners for roughly $5.8 million and immediately sold it to the Retirement Fund for approximately $6.2 million. Defendants contend that the source of the $400,000 differential between the purchase price and sale price was the original landowners, not the Retirement Fund. They argue that because their purchases from the original landowners were indisputably legal, the $400,000 was not derived from criminal activity. The argument lacks merit. The Retirement Fund was the source of the $400,000 differential, not the original landowners. Defendants' fraudulent inducement to the Retirement Fund renders the $400,000 income derived from criminal activity.[4] The two-level enhancement under Guideline Sec. 2T1.1 was proper.
 
 III. "Sophisticated Means" Enhancements
 
 16
 A defendant convicted of tax fraud is subject to a two-level enhancement if "sophisticated means were used to impede discovery or nature of the offense." U.S.S.G. Sec. 2T1.1(b)(2). The district court imposed a two-level "sophisticated means" increase when calculating each defendant's sentence. Defendants contend that the record does not support the enhancement. We review for clear error. United States v. Ford, 989 F.2d 347, 351 (9th Cir. 1993).
 
 
 17
 Defendants point out that a "sophisticated means" enhancement is appropriate only for conduct "that is more complex or demonstrates greater intricacy or planning than a routine tax-evasion case." U.S.S.G. Sec. 2T1.1 (1990) n.6. The Application Notes provide, however, that a "sophisticated means" enhancement is proper "where the defendant used offshore bank accounts, or transactions through corporate shells."
 
 
 18
 Ample record evidence supports the district court's two-level enhancement for sophisticated means. The Presentence Reports -- which were adopted by the district court as the factual basis for its sentencing determinations -- detail the considerable complexity of defendants' tax evasion scheme. Both defendants concealed VPI corporate revenues by receiving and disbursing funds through third-party accounts. Fisher also hid assets with corporate shells. The district court did not clearly err in imposing two-level enhancements for "sophisticated means" under Sec. 2T1.1.
 
 
 19
 IV. Bontrager's Role-In-The-Offense Enhancement
 
 
 20
 The district court imposed a two-level enhancement for Bontrager's role as an "organizer or leader" of the conspiracy. See U.S.S.G. Sec. 3B1.1(c). Bontrager argues that no record evidence supports this enhancement. We review for clear error. United States v. Monroe, 943 F.2d 1007, 1019 (9th Cir. 1991), cert. denied, 112 S. Ct. 1585 (1992).
 
 
 21
 The district court imposed the "organizer or leader" enhancement on the basis of its factual findings that Bontrager concocted the scheme, recruited Fisher, was more active in concealing VPI's income than Fisher, and benefitted most from hiding income. The record does not demonstrate that these factual findings were clearly erroneous. See United States v. Alonso, 48 F.3d 1536, 1545 (9th Cir. 1995) (an organizer or leader enhancement requires a showing that the defendant "exercised some control over others involved in the commission of the offense or [was] responsible for organizing others for the purpose of carrying out the crime.") (internal quotation omitted).
 
 
 22
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Bontrager argues that the language of Fed. R. Crim. P 11(e)(1) does not permit partial pleas. Rule 11(e)(1) sets forth the government's requirements upon a defendant's "plea of guilty or nolo contendere to a charged offense or related offense." Bontrager reliance on this language is misplaced. It does not necessarily preclude a plea to a portion of a count containing multiple prongs
 
 
 [2]
 In support of their position, defendants cite Vickers v. Commissioner, 36 T.C.M. (CCH) 391 (1977). Vickers is a memorandum decision by the tax court, which has no precedential value. Inverworld, Ltd. v. Commissioner, 979 F.2d 868, 878 n.9 (D.C. Cir. 1992); Nico v. Commissioner, 67 T.C. 647, 654 (1977) ("[W]e consider neither revenue rulings nor Memorandum Opinions of this Court to be controlling precedent."). Even if Vickers were citable authority, however, our analysis would be no different
 
 
 [3]
 Williams, 367 F.2d at 825 (evidence suggested "that the transaction was truly a loan"); Patton, 249 F.2d at 378 ("the formal embodiment of the agreement must not be considered in isolation, but rather viewed in relation to the preliminary negotiations of the parties"); Blake, 8 T.C. at 554 (discussing taxpayer's intent when structuring disputed transaction)
 
 
 [4]
 Under Or. Rev. Stat. Sec. 165.102, obtaining the execution of a written instrument that affects the pecuniary interest of another through "fraud, deceit or subterfuge" is a crime