UNITED STATES of America,
Plaintiff–Appellee,

v.

Kenneth E. FORD, Defendant–Appellant.

No. 92–30122.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 8, 1992.

Decided March 30, 1993.

Sheryl Gordon McCloud, Seattle, WA, for defendant-appellant.

Scott A. Schumacher, U.S. Dept. of Justice, Washington, DC, for plaintiff-appellee.

Before: WALLACE, Chief Judge, WRIGHT and LEAVY, Circuit Judges.

WALLACE, Chief Judge:

Ford appeals from his sentence imposed after he pleaded guilty to tax evasion in violation of 26 U.S.C. § 7201 and filing a false federal income tax return in violation of 26 U.S.C. § 7206(1). The district court exercised jurisdiction under 18 U.S.C. § 3231. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We affirm in part, reverse in part, vacate in part, and remand for resentencing.

I

Ford, an American citizen, established a network of Canadian and American companies (the Companies). He represented that they conducted legitimate research and development projects in order to take advantage of Canada's Scientific Research Tax Credit Program (Program). The Program, now repealed, was intended to stimulate Canadian research and development by offering attractive tax benefits to investors in research companies. A company engaged in research and development seeking to qualify under the Program made a "designation" to the Canadian government and filed an informational return describing the intended research project, thereby incurring a tax liability equal to 50 percent of the stated cost of the project. By making qualified research expenditures, a company could extinguish one dollar of tax liability for every two dollars spent on research. In order to finance their projects, research companies sought capital from investors, who received a one dollar tax credit for every two dollars invested. Invested capital was escrowed in a qualified Canadian bank that would disburse the cash to a research company upon proof of qualified research expenditures.

Ford controlled the Companies through his Vancouver based management firm, Ford, Gray, and Associates, Ltd. (Ford, Gray). Ford, Gray billed the Companies for management and consulting services, commissions, rent, and other costs. Ford extracted money from the Companies in the form of salary payments and consulting fees. Ford extinguished the Canadian tax liabilities of the Companies by submitting invoices for research that was never actually done. Ford fraudulently extracted hundreds of thousands of dollars in escrowed funds held by Canadian banks by submitting false invoices, contracts, and bills of lading. Ford also used his American companies, some of which did not exist, to bill his Canadian companies for nonexistent equipment, services, and other expenses.

United States and Canadian authorities launched a joint investigation of Ford's activities. In February of 1986, Canadian authorities executed search warrants at the Vancouver offices of Ford, Gray. The search warrants applied to business records of two of the Companies, but not to those of Ford, Gray itself. Ford was seen leaving the premises with a briefcase he had filled while the search was being conducted. Shortly thereafter, Ford fled to the United States. In July 1987, Canadian authorities filed criminal charges against Ford. Ford then fled to Costa Rica because that country has no extradition treaty with either the United States or Canada for tax offenses. While in Costa Rica, Ford arranged to receive several boxes of business records relating to Ford, Gray that he had secreted in various locations in Washington and Utah following the February 1986 search of Ford, Gray.

Ford provided his income tax preparer with false information indicating that he was entitled to claim a foreign tax credit on his 1984 federal income tax return based upon his payment of over $60,000 in Canadian income tax. Actually, Ford had reported to Canada a taxable income of only $3,858 for 1984, and had paid personal income taxes of only $42. The $60,000 consisted of taxes withheld against the anticipated Canadian tax liability of Power Pump International, Inc., one of the Companies. In April of 1989, Ford filed a delinquent 1984 federal income tax return that falsely claimed a foreign tax credit of over $19,000.

Ford returned to the United States in August of 1990, and was a fugitive for several months until his arrest in December. He was extradited to Canada where he pleaded guilty to criminal fraud and was sentenced to prison. Upon his release from Canadian custody, Ford was deported to the United States and placed in custody.

Ford subsequently pleaded guilty to counts II and III of a seven count indictment. Only count III, filing a false 1984 tax return on or about April 24, 1989, is subject to the United States Sentencing Guidelines (Guidelines). For sentencing purposes, the parties stipulated that the tax loss resulting from count III was $156,922.

The presentence report prepared by a probation officer computed an offense level of 19 for count III. Pursuant to U.S.S.G. § 2T1.3(a)(1), the probation officer looked to the tax table in section 2T4.1 to determine that the base offense level was 13. The probation officer then applied two specific offense characteristics under section 2T1.3(b). First, the probation officer determined that because Ford had failed to report income exceeding $10,000 per year from criminal activity, section 2T1.3(b)(1) mandated a two-level increase. The criminal activity relied on was Ford's fraudulent activities in Canada. Second, the probation officer concluded that a two-level increase pursuant to section 2T1.3(b)(2) should be imposed because Ford used sophisticated means to impede discovery of the nature or extent of his offense.

The probation officer further concluded that a two-level increase for obstruction of justice was warranted under section 3C1.1 because Ford had secreted business records pertinent to the investigation of the instant offense. Finally, the probation report stated that Ford had not met the criteria for a two-level reduction for acceptance of responsibility pursuant to section 3E1.1. Therefore, the probation officer calculated the total offense level to be 19.

Ford objected to the three increases for criminal activity, sophisticated means, and obstruction of justice, and he objected to the denial of the reduction for acceptance of responsibility. The district court, in making its ruling, incorporated all the facts as stated in the presentence report except to the extent they conflicted with the court's oral findings. The district court rejected Ford's arguments and held that the appropriate offense level on count III was 19, resulting in a Guideline range of 30 to 37 months. The district court imposed on Ford a 32 month sentence of imprisonment on count III.

II

■ Ford argues that the district court erred in imposing a two-level increase in his base offense level based on Ford's failure to report income exceeding $10,000 from criminal activity, pursuant to U.S.S.G. § 2T1.3(b)(1). We review de novo the district court's application and interpretation of the Guidelines, but the district court's factual determinations are reviewed for clear error. *United States v. Restrepo*, 884 F.2d 1294, 1295 (9th Cir.1989) (*Restrepo*); 18 U.S.C. § 3742(e). The district court's determination that Ford's actions in Canada constitute "criminal activity" within the meaning of section 2T1.3(b)(1) presents a question of law reviewed de novo.

■ The presentence report explained that more than $10,000 of Ford's unreported income "is, in part, the 'fruits' of his fraudulent activities in Canada." The record supports the conclusion that as part of his Canadian tax fraud scheme, Ford en-

gaged in fraudulent activities in Canada generating more than $10,000 of income that went unreported in the United States. The presentence report concluded that these ·facts mandated a two-level upward adjustment in Ford's base offense level, pursuant to U.S.S.G. § 2T1.3(b)(1), which provides: "If the defendant failed to report or to correctly identify the source of income exceeding $10,000 in any year from criminal activity, increase by 2 levels." The Commentary to this section effective at the time of Ford's sentencing provides: "'Criminal activity' means any conduct constituting a criminal offense under federal, state, or local law." *Id.* at application note 1.

Ford objected to the imposition of this adjustment, arguing that because the fraudulent activity relied on for the adjustment took place in Canada, and violated only Canadian, not American law, the activity could not constitute "criminal activity" as that term is defined in the Guidelines and its commentary. It is undisputed that the only activity relevant to the present inquiry occurred in Canada. The district court addressed the issue:

> The question has been raised in the briefs as to whether illegality under Canadian law would satisfy the requirements for this adjustment. I find that the conduct that produced the proceeds in this case was illegal both under Canadian and United States law, that is, had it taken place entirely in the United States it would have been illegal here, and under those circumstances, the conduct being illegal both where it was committed and under American law had it been committed in this country, that the required illegality is shown.

The issue before us is one of first impression and requires that we determine whether the district court's analysis is correct.

Ford's only conviction in Canada was for tax fraud. The "criminal activity" of section 2T1.3(b)(1) cannot refer to tax fraud or tax evasion, since these activities do not actually generate any income; they merely result in an amount of previously generated income being unlawfully withheld from the taxing authority. As part of his Canadian tax fraud scheme, however, Ford engaged in other fraudulent activities, such as using false invoices to extract escrowed funds, that did result in over $10,000 of income that went unreported in the United States. Assuming, without deciding, that conduct that does not lead to a conviction may constitute criminal activity within the meaning of section 2T1.3(b)(1), we consider the propriety of the district court's reliance on Ford's Canadian activities to arrive at the disputed two-level increase.

It is undisputed that no domestic jurisdiction criminalizes fraud in Canada. Thus, Ford's Canadian conduct does not constitute "a criminal offense under federal, state, or local law." U.S.S.G. § 2T1.3(b)(1) application note 1. We need not reach whether the district court was correct in its holding that Ford's fraudulent acts, if perpetrated within the United States, would constitute criminal offenses. Even assuming that the district court was correct, the fact remains that Ford's acts were not perpetrated within the United States. All of Ford's income-generating fraudulent acts took place in Canada, outside of United States jurisdiction. The Commentary does .not define "criminal activity" as "conduct that *would constitute* a criminal offense under federal, state, or local law," but as "conduct *constituting* a criminal offense under federal, state, or local law." *Id.* (emphasis added). The Guidelines do not speak to hypothetical criminal offenses, but to those the defendant actually committed. None of Ford's Canadian activities constitute criminal offenses in any domestic jurisdiction.

The government argues that the legislative history of and the policies underlying section 2T1.3 support the district court's analysis. Where the language of a statute is clear and fails to compel an absurd result, however, courts are discouraged from examining legislative history. *See United Air Lines v. McMann,* 434 U.S. 192, 199, 98 S.Ct. 444, 448, 54 L.Ed.2d 402 (1977) ("legislative history ... is irrelevant to an unambiguous statute"); *Nugget Hydroelectric, L.P. v. Pacific Gas & Elec. Co.,* 981 F.2d 429, 433 (9th Cir.1992) (when statute

is clear and fails to compel an absurd result, "[w]e will look no further than the face of the statute"). "Moreover, an analysis of legislative history is proper only to *solve*, not to *create* an ambiguity." *Arizona Elec. Power Coop. v. United States*, 816 F.2d 1366, 1375 (9th Cir.1987).

In this case, the unambiguous language of the Commentary to section 2T1.3 does not embrace crimes against foreign jurisdictions, and it is not patently absurd for income from such crimes not to count toward an upward adjustment. The government would have us rummage through unauthoritative materials to shoehorn Canadian crimes into this section. We will look no further than "the plain language of the Guidelines and the relevant commentary in effect at the time of sentencing." *United States v. Koenig*, 952 F.2d 267, 273 (9th Cir.1991). Because Ford's Canadian conduct cannot be "criminal activity" within the meaning of U.S.S.G. § 2T1.3(b)(1), we reverse the district court's imposition of a two-level increase in Ford's base offense level pursuant to that section. On remand, the district court may consider whether Ford's Canadian activities justify an upward departure under U.S.S.G. § 4A1.3(a). *See United States v. Soliman*, 889 F.2d 441, 445 (2d Cir.1989).

### III

■ Ford also contends that the district court erred in imposing a two-level increase in his base offense level based on Ford's use of sophisticated means to impede discovery of the nature or extent of Ford's offense, pursuant to U.S.S.G. § 2T1.3(b)(2). The district court's finding that Ford used sophisticated means is a factual one, reviewed for clear error. *See Restrepo*, 884 F.2d at 1295; *cf. United States v. Hutchison*, 983 F.2d 1497, 1505 (9th Cir.1993) (reviewing for clear error district court's increase in base offense level for "more than minimal planning," pursuant to U.S.S.G. § 2F1.1(b)(2)(A)). Ford's argument that the district court's finding in this regard should not be accorded deference because the district court's statement was conclusory is without merit; the district court

adopted the factual findings in the presentence report, which detailed Ford's unlawful scheme.

Ford argues that the sophisticated means relied on to support this upward adjustment applied only to crimes other than the single Guidelines count to which he pled guilty. The record does not support Ford's assertion. The presentence report recounts Ford's use of his Canadian operations to generate foreign tax credits which he proceeded to claim on his 1984 personal income tax return, the subject of count III of the indictment, to which Ford pleaded guilty. The use of a foreign corporation to generate corporate foreign tax payments which are then claimed on a domestic personal income tax return as foreign tax credits is sufficiently "more complex" than "routine tax evasion," U.S.S.G. § 2T1.3 application note 2, and justifies the district court's factual determination of sophisticated means. Because Ford's personal use of this corporate foreign tax credit provides a sufficient basis in the record for the district court's finding, we need not consider Ford's other arguments on this issue. We affirm the district court's imposition of a two-level increase in Ford's base offense level pursuant to U.S.S.G. § 2T1.3(b)(2).

### IV

■ Ford next challenges the district court's imposition of a two-level increase in his base offense level based on Ford's obstruction of the government's investigation, pursuant to U.S.S.G. § 3C1.1. In reviewing the district court's application of section 3C1.1, factual determinations are reviewed for clear error, *United States v. Jackson*, 974 F.2d 104, 105 (9th Cir.1992), while the district court's characterization of Ford's conduct as obstruction within the meaning of section 3C1.1 presents a question of law reviewed de novo, *United States v. Morales*, 977 F.2d 1330, 1331 (9th Cir.1992).

In imposing an increase for obstruction of justice, the district court relied on Ford's actions in secreting the business records of Ford, Gray in Costa Rica. The district court found that the investigation into the

extent of Ford's personal wealth was severely hampered by lack of access to all of Ford, Gray's business records. This finding is amply supported by the record. Ford nevertheless argues that because the boxes were shipped to him in 1987 or 1988, whereas his false 1984 tax return was not filed until April of 1989, this activity cannot constitute obstruction within the meaning of section 3C1.1.

Section 3C1.1 provides: "If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice *during the investigation, prosecution, or sentencing of the instant offense,* increase the offense level by 2 levels." U.S.S.G. § 3C1.1 (emphasis added). The plain language of the relevant part of this provision requires that the obstructing conduct occur "during the investigation ... of the instant offense." *Id.* Although the record does not establish precisely when Ford received the boxes, the latest date mentioned is May of 1988. The factual findings made in support of the section 3C1.1 enhancement do not explain how Ford's secreting of the boxes constituted a "willful[ ]" attempt to obstruct the investigation into the "instant offense" of filing a false tax return at least eleven months later. *See United States v. Barry,* 938 F.2d 1327, 1333 (D.C.Cir.1991) (conduct occurring 10 months prior to instant offense too remote in time to provide basis for section 3C1.1 enhancement).

It is true that a criminal investigation of Ford was under way as early as February of 1986, but the language of section 3C1.1 does not encompass "any and all obstructive conduct that a defendant may have attempted or committed, but instead applies only to willful attempts 'to obstruct or impede the administration of justice [in relation to] the instant offense.' " *Id., quoting* U.S.S.G. § 3C1.1. The term "instant offense" refers solely to the offense of conviction, in this case filing a false 1984 tax return. *Id.; United States v. Yates,* 973 F.2d 1, 4–5 (1st Cir.1992); *United States v. Perdomo,* 927 F.2d 111, 118 (2d Cir.1991); *United States v. Dortch,* 923 F.2d 629, 632 (8th Cir.1991); *United States v. Roberson,* 872 F.2d 597, 609 (5th Cir.),

*cert. denied,* 493 U.S. 861, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989); *cf. United States v. Lato,* 934 F.2d 1080, 1083 (9th Cir.) (acknowledging "that the Guidelines' use of the language 'the instant offense' suggests that there must be some connection between the obstruction and the federal offense for which defendant is being sentenced"), *cert. denied,* —— U.S. ——, 112 S.Ct. 271, 116 L.Ed.2d 224 (1991). The plain language of section 3C1.1 makes this provision inapplicable to an offense committed almost a year after the allegedly obstructive conduct takes place.

We stress the narrowness of our holding on this issue. If the district court had identified affirmative acts of obstruction after April of 1989, or if the government had made a demand for production with which Ford refused to comply, the result might well be different. On the record before us, however, we are constrained to vacate the district court's imposition of a two-level increase for obstruction of justice and remand for resentencing. On remand, the district court will have the opportunity to apply the correct legal standard to determine whether Ford's action regarding the boxes of records, or other conduct, constitutes obstruction within the meaning of section 3C1.1.

### V

Finally, Ford contends that the district court erred in refusing to grant a two-level decrease in his base offense level, based on Ford's acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. We review the district court's determination for clear error. *United States v. Rosales,* 917 F.2d 1220, 1222 (9th Cir.1990). Because the sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility, the district court's determination is entitled to great deference on review. U.S.S.G. § 3E1.1 application note 5 (1991).

The district court stated that Ford's ongoing concealment of the records was the "decisive" factor in concluding that Ford did not qualify for a reduction based on

acceptance of responsibility. Ford argues that because he had accepted responsibility for the crime of filing a false return, his "related conduct" of "the treatment of those records" cannot justify a denial of this reduction. Ford is mistaken. Ford's continued concealment of the records is sufficient ground to conclude that he has not "clearly demonstrate[d] a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. § 3E1.1(a). Ford's actions qualify as "conduct ... inconsistent with ... acceptance of responsibility." U.S.S.G. § 3E1.1 application note 3. That this conduct does not suffice for obstruction under section 3C1.1 does not diminish its value as evidence of Ford's failure to accept responsibility. *See United States v. Beal,* 960 F.2d 629, 634 n. 3 (7th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 230, 121 L.Ed.2d 166 (1992); *United States v. White,* 875 F.2d 427, 431–32 (4th Cir.1989). In addition, the presentence report emphasizes that "[i]n admitting [his] guilt, [Ford] has, however, minimalized and rationalized his behavior ... by projecting the blame ... on others.... Ford makes the [majority] of his statements that would appear to show true acceptance of responsibility only when he is pushed to do so." These determinations, accepted by the district court, further support the court's finding, which is entitled to great deference. We affirm the district court's refusal to grant Ford a reduction based on acceptance of responsibility.

AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, AND REMANDED FOR RESENTENCING.