**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Scott KARTERMAN, Defendant–
Appellant.**

**No. 93–30408.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 7, 1995.

Decided July 13, 1995.

---

Peter Goldberger, Ardmore, PA; Karen Landau, Law Offices of Alan Ellis, Mill Valley, CA, for defendant-appellant.

Barry McHugh, Asst. U.S. Atty., Boise, ID, for plaintiff-appellee.

Before: SKOPIL, HALL, and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

## OVERVIEW

Scott M. Karterman was convicted by a jury of two counts of making false statements on his income tax returns. He was acquitted on a count of attempted income tax evasion and two drug-related counts. The district court sentenced him to a 21–month prison term and one year of supervised release, imposed a $10,000 fine, and assessed $8,640.28 for costs. Karterman timely appeals both his conviction and his sentence. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## FACTS

Karterman is a real estate broker in Sun Valley, Idaho. The Internal Revenue Service and Drug Enforcement Agency began investigating him in the late 1980s. Pursuant to warrant searches of Karterman's residence, government agents seized evidence of tax evasion and drug-related paraphernalia.

Karterman was charged with six counts: Two counts of making false statements on his income tax returns for 1985 and 1986 (counts 1 and 2); attempted income tax evasion for 1987 (count 3); conspiracy to distribute cocaine (count 4); distribution of cocaine (count 5); and using his residence to facilitate narcotics trafficking, thus justifying forfeiture of the property (count 6). The first five counts were tried in June and July 1993. Count 6 was tried separately and is not a part of this appeal.

On the false tax return counts, the government presented evidence that Karterman had significantly more income than he had reported on his tax returns, and that he had intentionally falsified financial loan documents. The government's theory was that the unreported income came from drug trafficking. Karterman argued that any underreporting to the IRS was not intentional, and he tried to show that the amount of unreported income was less than the government claimed. His own figures, however, indicated that he did have unreported income in both years.

On the drug counts, the government presented witnesses who claimed to have purchased drugs from Karterman at various times during the 1980s. Two of them testified that the drugs were purchased in quantities and in packages appropriate for resale. Karterman admitted prior drug use but denied any drug trafficking activity. He presented evidence of his good character and attempted to undermine the credibility of the government's witnesses.

The jury convicted Karterman on counts 1 and 2 (the false tax return counts) and acquitted him on counts 4 and 5 (the drug conspiracy and distribution counts). The district court granted Karterman's motion for acquittal on count 3.

Karterman was sentenced on October 1, 1993. Over Karterman's objection, the court adjusted his base offense level upward two levels for obstruction of justice and two more levels for failing to report income exceeding $10,000 that came from criminal activity. The obstruction of justice enhancement was based on Karterman's alleged attempt to influence the testimony of his bookkeeper and government witness, Jacqueline Vork. The criminal activity enhancement was based on the court's determination that Karterman's unreported income (which exceeded $10,000) came from narcotics trafficking. Karterman timely appeals his conviction and sentence.

## DISCUSSION

### I. ADMISSION OF DRUG–RELATED EVIDENCE

■ Over Karterman's objection, the district court admitted into evidence various items seized from Karterman's residence in December 1990. The challenged evidence consists of a nearly empty bottle of Mannitol (a laxative that is often used as a cutting agent for cocaine), a cocaine spoon, a box of baggies, a piece of paper with trace amounts of cocaine, and marijuana "roaches." Karterman asserts that the items are merely evidence of drug use and that as such, their admission to show drug distribution violated Federal Rules of Evidence 404(b) and 403.

We do not believe that the district court abused its discretion by admitting the challenged evidence. *See United States v. Brooke,* 4 F.3d 1480, 1487 (9th Cir.1993) (evidentiary rulings are reviewed for an abuse of discretion). Even if it did, however, we hold that reversal is not required because the error did not affect the jury's verdict. *See United States v. Chu Kong Yin,* 935 F.2d 990, 994 (9th Cir.1991) (reversal for nonconstitutional evidentiary error is not appropriate unless the error more likely than not affected the verdict).

The evidence that Karterman alleges should have been excluded was most directly relevant to the drug counts. It seems to us quite implausible that the jury was unduly swayed on the false tax return counts by evidence that was more relevant to the drug counts on which it acquitted Karterman. Moreover, there was an abundance of other evidence from which the jury could find Karterman guilty on counts 1 and 2, including documentary evidence of underreported income; Karterman's own figures showing that his income for the relevant years was underreported; and his admission that he intentionally falsified financial loan documents.

## II. JURY INSTRUCTION ON CHARACTER EVIDENCE

 Karterman claims that the district court's failure to give his proposed instruction on character evidence allowed the jury to convict him on the false tax return counts without properly considering relevant, exculpatory evidence of his good character. Karterman did not timely object to the jury instructions, and he raises this argument for the first time on appeal. Therefore, we review the district court's ruling for plain error, *United States v. Kessi,* 868 F.2d 1097, 1102 (9th Cir.1989), which means we must find "clear" or "obvious" error that "affect[ed] [the defendant's] substantial rights," *United States v. Olano,* —— U.S. ——, —— —— ——, 113 S.Ct. 1770, 1777–78, 123 L.Ed.2d 508 (1993). The defendant generally must also show that the error "affected the outcome of the District Court proceedings." *Id.* at ——, 113 S.Ct. at 1778.

On the facts of this case, the lower court's refusal to give Karterman's requested instruction did not amount to clear or obvious error that affected Karterman's substantial rights. Several witnesses testified to Karterman's character for truth and honesty. Karterman testified that he did not intentionally underreport any income, and his counsel emphasized Karterman's honest intent during closing argument. The district court instructed the jury to "consider all of the evidence introduced by all parties," to "carefully scrutinize all the testimony given," and to consider "every matter in evidence which tends to show whether a witness is worthy of belief."

Moreover, in light of the previously described evidence supporting the jury's guilty verdicts, Karterman has not demonstrated that the alleged instructional error affected the outcome of his trial. *See United States v. Armijo,* 5 F.3d 1229, 1233–34 (9th Cir. 1993) (no plain error where evidence other than the erroneously admitted evidence supported the determination of guilt). We therefore hold that the district court's refusal to give Karterman's requested instruction on character evidence does not amount to plain error.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

 Karterman alleges that he was denied effective assistance of counsel because his attorney failed to request a cautionary jury instruction concerning "addict witnesses." We find that this claim is premature and we decline to address it at this juncture. *See United States v. Swanson,* 943 F.2d 1070, 1072 (9th Cir.1991) (appellate court generally reviews ineffective assistance claims through *habeas corpus* proceedings, where the record has been more fully developed).

## IV. "CUMULATIVE" TRIAL ERRORS

 Karterman argues that even if none of the alleged trial errors, standing alone, requires reversal of his conviction, the cumulative effect of the alleged errors does. We disagree. If the district court erred by admitting the drug-related evidence, that error was harmless, and the court did not commit

plain error by refusing to give Karterman's requested credibility instruction. Because each error is, at best, marginal, we cannot conclude that their cumulative effect was "so prejudicial" to Karterman that reversal is warranted. *See United States v. Necoechea,* 986 F.2d 1273, 1282–83 (9th Cir.1993); *United States v. Payne,* 944 F.2d 1458, 1477 (9th Cir.1991), *cert. denied,* 503 U.S. 975, 112 S.Ct. 1598, 118 L.Ed.2d 313 (1992).

## V. UPWARD ADJUSTMENT FOR DRUG–RELATED INCOME

■■■ The district court adjusted Karterman's base offense level upward two levels under U.S.S.G. § 2T1.3(b)(1) (Nov.1992).[1] The enhancement was based on the court's determination that Karterman made more than $10,000 in unreported income from narcotics trafficking. The district court's interpretation of a Sentencing Guidelines section is reviewed *de novo. United States v. Ford,* 989 F.2d 347, 349 (9th Cir.1993). The factual findings on which the lower court based the enhancement are reviewed for clear error. *Id.*

Karterman argues that the enhancement was inappropriate on the facts of his case.[2] Section 2T1.3 permits a two-level enhancement if unreported income of over $10,000 comes from "criminal activity." Drug trafficking, upon which the district court based the section 2T1.3 enhancement, clearly constitutes "criminal activity." The difficulty in this case is that Karterman was not convicted of any drug trafficking offenses. He also was acquitted on counts that charged him with a conspiracy to distribute drugs and a specific instance of drug distribution. We therefore first consider whether a defendant must be convicted of the "criminal activity" upon which the section 2T1.3 enhancement is based.

### A. Conduct that Does Not Lead to a Conviction May Constitute "Criminal Activity"

■■ In *United States v. Ford,* this court expressly left open the question whether "conduct that does not lead to a conviction may constitute criminal activity" for purposes of section 2T1.3. 989 F.2d at 350. We now hold that a conviction is not a necessary prerequisite to a "criminal activity" enhancement under that section (which has since been incorporated into U.S.S.G. § 2T1.1).

A sentencing court generally may consider facts that were not proven or even introduced at trial, as long as the government establishes those facts by a "preponderance of evidence." *See United States v. Restrepo,* 946 F.2d 654, 656–57 (9th Cir.1991) (en banc) (*"Restrepo II"*), *cert. denied,* 503 U.S. 961, 112 S.Ct. 1564, 118 L.Ed.2d 211 (1992); U.S.S.G. § 6A1.3 commentary. Thus, this court has allowed sentencing enhancements based on conduct that did not result in conviction, *United States v. Duran,* 15 F.3d 131, 133 (9th Cir.1994) (per curiam) (allowing sentencing adjustment, for sentence under U.S.S.G. § 3B1.3, based on charge on which jury had failed to reach a verdict); *United States v. Fine,* 975 F.2d 596, 602–03 (9th Cir.1992) (en banc) (allowing sentencing court to consider, when determining "loss" under U.S.S.G. § 2F1.1, counts that had been dismissed pursuant to a plea agreement), and on conduct with which the defendant was not even charged, *United States v. Restrepo,* 903 F.2d 648, 653 (9th Cir.1990) (*"Restrepo I"*) (permitting enhancement to a sentence under U.S.S.G. § 2D1.1 based on quantities of drugs charged only against codefendant), *withdrawn in part, Restrepo II,* 946 F.2d 654 (9th Cir.1991), *cert. denied,* 503 U.S. 961, 112 S.Ct. 1564, 118 L.Ed.2d 211 (1992).

We see no reason not to follow these cases when considering enhancements under section 2T1.3. The language of that section supports our holding. "Criminal activity" in

---

1. The 1992 version of the Guidelines applied at the time of Karterman's sentence. All citations herein to sections of the Guidelines refer to the 1992 version, unless otherwise noted.

2. Karterman also argues that an enhancement under section 2T1.3(b)(1) is only proper if the unreported $10,000 was earned during a tax year to which a false return relates. We do not decide whether Karterman's interpretation of section 2T1.3 is correct, because the district court interpreted the section consistently with Karterman's view.

section 2T1.3 is defined in the commentary as "any conduct constituting a criminal offense under federal, state, or local law." The definition makes no mention of the necessity of a conviction. We will not read into the section a requirement that so easily could have been written into it.

### B. The District Court Permissibly Considered Drug–Related Evidence

■ Although we hold that a conviction is not required for a section 2T1.3 enhancement, Karterman's sentence enhancement clearly may not be based on conduct of which he has been acquitted, or on facts "necessarily rejected by [the jury's] acquittal." *See United States v. Pinkney*, 15 F.3d 825, 829 (9th Cir.1994); *United States v. Brady*, 928 F.2d 844, 851–52 (9th Cir.1991).

On count 4, Karterman was acquitted of conspiring to distribute cocaine from "a date unknown, but no later than January, 1987 and continuing until July 12, 1988." On count 5, he was acquitted of distributing cocaine to Roxanne Martin on or about June 8, 1988. Karterman argues that these acquittals mean that the jury necessarily rejected his involvement in *any* drug distribution. As his counsel clarified at oral argument, Karterman asks us to hold that a jury's acquittal on a conspiracy charge means that the jury "necessarily rejected" the substantive conduct underlying the charge during the life of the conspiracy. In Karterman's case, this would mean that the jury "necessarily rejected" *all* evidence of Karterman's drug distribution activities because Karterman was acquitted on a conspiracy charge with an unspecified beginning date.

Karterman is arguing for a much broader definition of "necessarily rejected facts" than the definition established by prior cases. In *Pinkney*, for example, we vacated a sentence where the lower court had enhanced Pinkney's sentence based on his possession of a firearm, even though the jury had acquitted Pinkney of armed robbery and had convicted him only of robbery. 15 F.3d at 826, 828–29. Similarly, in *Brady*, we reversed where the lower court had increased Brady's sentence based on his intent to kill his victims, even though the jury had acquitted Brady of mur-

der (which required proof of his intent) and had convicted him of voluntary manslaughter (which did not). 928 F.2d at 850–52.

In those prior cases, the jury's acquittal on one charge, and conviction on the lesser included charge, allowed us to conclude with certainty that the jury had *necessarily* rejected the additional element upon which the sentencing judge later enhanced the defendant's sentence. Here, by contrast, we cannot tell what facts or evidence the jury rejected when it acquitted Karterman on counts 4 and 5. The jury could have reached its verdicts (convicting on the false tax return counts and acquitting on the drug conspiracy count) for a variety of reasons. For example, the jury might have accepted all the evidence of Karterman's drug distribution activity but acquitted him of conspiracy because it rejected the evidence that Karterman had an agreement with another. *See United States v. Garza*, 980 F.2d 546, 552 (9th Cir.1992) (one element of conspiracy is an agreement to accomplish an illegal objective). Or, the jury might have believed that a conspiracy to distribute drugs existed prior to 1987 but acquitted Karterman because the government did not show that the conspiracy continued into the time frame charged (January 1987 to July 12, 1988). These various possibilities demonstrate that the jury did not *necessarily* reject Karterman's involvement in the substantive conduct underlying the conspiracy charge—*i.e.*, drug trafficking.

Thus, Karterman's case does not fit within the narrow definition of "necessarily rejected" facts established by *Brady* and subsequent cases. For the following reasons, we decline Karterman's invitation to read *Brady*'s "necessarily rejected" language more broadly. First, that language was written narrowly, precluding consideration only of "*necessarily* rejected" facts, 928 F.2d at 851, not facts that were "possibly rejected" or even "probably rejected."

Second, a narrow interpretation is most consistent with the policy goals of the Guidelines, as described by the *Brady* court. In *Brady*, we acknowledged that the Guidelines generally permit a sentencing judge to consider evidence of conduct that was not proven beyond a reasonable doubt at trial. 928

F.2d at 851 (citing U.S.S.G. § 1B1.3(a)). This court has explained elsewhere that allowing consideration, for sentencing purposes, of conduct that was not charged or was not proven at trial is consistent with the Guidelines' overall sentencing scheme and purpose. *See, e.g., Restrepo I,* 903 F.2d at 653 (allowing sentencing court to add amounts of drugs involved in counts for which defendant was not charged "reflects the balance struck by the Sentencing Commission between a 'real offense' sentencing system—one that takes into account the defendant's real conduct, rather than simply the conduct for which he or she is charged—and a 'charge offense' system, under which only the conduct of which the defendant is charged may be taken into account at sentencing").

We recognized in *Brady,* however, that if we interpreted the Guidelines to mean that sentencing courts could consider, without restriction, *any* facts not proven at trial, we would undermine the Guidelines in a different way, because we would allow judges to circumvent the Guidelines' sentencing grid. That is why, in that case, we refused to allow a sentencing court to sentence defendants for offenses or based on facts that the jury had already rejected:

> The Guidelines recognize that voluntary manslaughter is to be punished less severely than murder by setting a lower base offense level for voluntary manslaughter than for murder. A sentencing court should not be allowed to circumvent this statutory directive by making a finding of fact—under any standard of proof—that the jury has necessarily rejected by its judgment of acquittal [on the murder charge].

928 F.2d at 851. Thus, we recognized in *Brady* that under certain circumstances, we would have to impinge upon the Guidelines' general policy of allowing a sentencing court the discretion to consider conduct not proven at trial, in order to protect a second policy of the Guidelines, *i.e.,* ensuring adherence to a uniform sentencing framework.

In this case, however, we are not presented with the same clear conflict between two of the Guidelines' policies. Where, as here, the jury's verdict does not clearly indicate its rejection of the facts underlying the sentencing judge's enhancement, the enhancement is not a "circumvention" of the Guidelines' sentencing grid. Accordingly, the Guidelines' policy of generally allowing sentencing judges to consider evidence not charged or proven at trial is implicated more strongly than the policy of ensuring adherence to the sentencing grid, and the former policy should prevail. Interpreting *Brady*'s "necessarily rejected" language narrowly ensures that sentencing judges generally retain the discretion, as authorized by the Guidelines, to consider conduct not proven at trial, except in those situations where the exercise of such discretion would circumvent the Guidelines.

### C. The Enhancement was Supported by a Preponderance of Evidence

Even though the district court was not precluded from considering evidence of Karterman's drug-related activity, the sentencing enhancement based thereon is only permissible if the facts justifying the enhancement were proven by a "preponderance of evidence." *Restrepo II,* 946 F.2d at 661. We conclude that a preponderance of evidence supports the district court's conclusion that over $10,000 of Karterman's unreported income for 1985 and 1986 came from drug trafficking.

There was ample evidence that Karterman engaged in fairly large-scale trafficking that could have generated over $10,000 income in a year. Lefner testified that during the early 1980s, Karterman was dealing multiple pounds of cocaine per month and was also supplying hashish. Vork testified that she purchased cocaine from Karterman as many as 48 times during 1985 and 1986. Karterman testified that he "wasn't making very much money in the ... real estate business," yet he lived an expensive life style and had numerous, unexplained cash deposits into his bank accounts in 1985 and 1986. Such evidence of a disparity between income and life style permits an inference of drug trafficking activity. *See United States v. Hoyland,* 914

F.2d 1125, 1130–31 (9th Cir.1990).[3] Further, Karterman could not legitimately explain much of the unreported income. *Cf. Duran,* 15 F.3d at 134 (affirming sentence adjustment for "abuse of trust" based on defendant's purchase of cashier's checks far in excess of defendant's salary where defendant "presented no evidence that the money came from a legitimate source").

In sum, we hold that the two-level enhancement was proper. The district court permissibly found, by a preponderance of evidence, that over $10,000 of unreported income in each year came from "criminal activity."

## VI. FEDERAL RULE OF CRIMINAL PROCEDURE 32(c)

■ Karterman argues that the district court violated Federal Rule of Criminal Procedure 32(c) by not adequately setting forth its reasons for rejecting his objections to the presentence report ("PSR").[4] This court reviews the lower court's compliance with Rule 32 *de novo. United States v. Maree,* 934 F.2d 196, 199 (9th Cir.1991). Although the district court's findings under Rule 32(c) must be "express," they need only state the court's resolution of the disputed issues. *See United States v. Rigby,* 896 F.2d 392, 394 (9th Cir.1990).

■ The sentencing court adequately stated and explained its resolution of the disputed issue in this case, and thereby satisfied Rule 32(c). During the sentencing hearing, the district court noted that the "amount of underreported income" was in dispute. The court stated: "In a review of the submit-

tals and the evidence I have reviewed, I am persuaded that the amount as indicated by the Government is, in fact, the correct amount of underreported income." In its written Rule 32(c) findings, the district court noted documentation submitted by the parties on the correct amount of underreported income and noted the PSR's agreement with the government's figure. The court then stated: "Having considered both the evidence presented at trial and the accounting documentation offered at sentencing, the Court finds that the defendant wrongfully underreported a total of $73,360." These statements demonstrate that the district court considered Karterman's objections, but resolved the disputed facts against him. This is sufficient to satisfy Rule 32(c). *See United States v. Corley,* 909 F.2d 359, 362 (9th Cir.1990); *Rigby,* 896 F.2d at 394.

## VII. UPWARD ADJUSTMENT FOR OBSTRUCTION OF JUSTICE

■ The district court concluded that Karterman had engaged in "a continuing effort to persuade Ms. Vork [a government witness] to change her testimony," and thus the court upwardly adjusted Karterman's offense level for obstructing justice. *See* U.S.S.G. § 3C1.1.[5] Section 3C1.1 provides:

If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.

---

3. *United States v. Safirstein,* in which this court refused to permit an enhancement based on an inference of drug trafficking activity, is distinguishable. *See* 827 F.2d 1380, 1386–87 (9th Cir. 1987). In *Safirstein,* unlike in this case, "there [was] not the barest scintilla of evidence that 'the defendant' was connected with narcotics," and the record supported other explanations for the defendant's income as readily as it supported an inference of drug trafficking. *Id.*

4. We note that amendments to Rule 32 took effect after Karterman's notice of appeal was filed. As a threshold matter, we conclude that it is "just and practicable" to apply the amended version. *See* 62 U.S.L.W. 4301 (U.S. Apr. 29, 1994). The amended version continues to re-

quire the "findings" that Karterman alleges were not sufficiently made in this case, and applying this version will not affect the panel's analysis of the alleged error. The amended version provides in relevant part:

For each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing. Fed.R.Crim.P. 32(c)(1) (1995).

5. Neither the district court nor we reach the government's argument that the upward adjustment was also justified by Karterman's allegedly perjurious trial testimony.

Karterman argues that the district court's adjustment was erroneous. We review whether Karterman obstructed justice for clear error. *United States v. Gardner,* 988 F.2d 82, 83 (9th Cir.1993) (per curiam).

In support of the adjustment, the sentencing court found: (1) Karterman went to Vork's residence and "told her that 'if [his case] went to a jury trial, it was going to be a very expensive year for [her]' "; (2) Karterman had at least two conversations with Vork on September 10, 1992, which "involved her continuing cooperation with the government"; (3) During one of those conversations, Karterman and Vork argued about her anticipated testimony and Karterman struck her in the face; (4) Karterman sued Vork for malicious prosecution based on the assault, even though he was not prosecuted for the incident.

Karterman argues that these findings are clearly erroneous because they are not based on "a preponderance of reliable evidence." *See United States v. Rafferty,* 911 F.2d 227, 231 (9th Cir.1990). The court's findings were based primarily on the transcript of a November 1992 hearing in which Karterman, Vork, and Martin testified regarding Karterman's alleged attempt to prevent Vork from testifying at trial. Karterman claims that the court's conclusion is not adequately supported because it rests exclusively on Vork's "inherently unreliable" hearing testimony.

We note that Vork's testimony should be viewed with caution because her reliability is questionable (for example, she received benefits from the government for testifying, she allegedly was an alcoholic, and she admitted she had been a drug user). *See United States v. Burrows,* 36 F.3d 875, 878 (9th Cir.1994). However, the evidence before the district court was neither as limited nor as incredible as Karterman asserts. Vork's hearing testimony was corroborated in part by Martin's testimony. Martin also testified that Karterman tried to get her to change her testimony. The district court had the opportunity to view and evaluate the credibility of each witness who testified at the hearing, because they all also testified at trial. Thus, the court had a basis for discriminating between the conflicting testimony about Kar-

terman's threatening conduct and for choosing to credit Vork's version of events.

In addition to the hearing transcript, the sentencing record contains other evidence to support the lower court's enhancement. For example, it contains a pretrial restraining order preventing Karterman from contacting Vork and information relating to Karterman's arrest for retaliating against a witness.

We cannot say that the district court's factual findings are clearly erroneous, and those findings clearly justify a two-level upward adjustment for obstructing justice. *See, e.g., United States v. Snider,* 976 F.2d 1249, 1251–52 (9th Cir.1992); *United States v. White,* 974 F.2d 1135, 1139–40 (9th Cir. 1992). The district court did not err by applying this adjustment.

## CONCLUSION

For the foregoing reasons, both Karterman's conviction and his sentence are AFFIRMED.