**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Louis Charles PINKNEY,
Defendant–Appellant.**

No. 91–50106.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted November 1, 1993.

Decided Jan. 21, 1994.

Philip I. Bronson, Encino, CA, for defendant-appellant.

Nancy B. Spiegel, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: FLETCHER, PREGERSON and NORRIS, Circuit Judges.

## OPINION

FLETCHER, Circuit Judge:

A jury found appellant Louis Pinkney guilty of various counts relating to the armed robbery of welfare checks from a postal worker. He appeals his conviction on one of these counts: conspiracy to rob a mail custodian, 18 U.S.C. § 371. He also appeals his sentence, challenging both the three-level enhancement for use of a firearm during the robbery, U.S.S.G. § 2B3.1(b)(2)(C), and the denial of a two-level decrease for being a "minor participant" in the offense, U.S.S.G. § 3B1.2(b).

We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We affirm appellant's conspiracy conviction, and the district court's finding that Pinkney was not a minor participant. We reverse the enhancement for use of a firearm, and remand for resentencing.

### FACTS

On May 15, 1990, United States mail carrier Colleen Day was approached by a man who asked for the time and then drew a gun, motioning her out of her vehicle. When she complied, the man got in the truck and drove away. The truck was recovered about 30 minutes later; most of the first class mail was missing. A telephone lineman reported seeing a gold Pontiac speeding out of the alley where the mail truck was found.

On July 8, 1990, Donnie Breed was arrested for possession of stolen mail. He had in his possession four welfare checks dated May 15, 1990 and addressed to persons on Day's route. Breed agreed to cooperate with postal investigators. At their request, he called Louis Pinkney, and in a taped conversation

Pinkney claimed he had committed the robbery along with Herbert Arceneux ("Cheez"), that it was Cheez who drew his gun on the mail carrier, and that Pinkney currently had the stolen checks and would give some of them to Breed to cash. Breed then arranged to meet Pinkney at a local restaurant so he could get the checks. Pinkney arrived in his gold Pontiac, and gave Breed 21 checks dated May 15 and addressed to persons on Day's route. He was arrested on the spot.

After the arrest, Pinkney signed a confession in which he admitted to participating in the robbery with Cheez and Christopher Pinkney (appellant's brother). He admitted to driving Cheez to the scene, following the stolen truck (driven by Cheez) to the alley, letting the stolen mail be put in his trunk and stored in his home, and later giving checks to Breed and Errol Sapp to cash.

On July 24, 1990, Pinkney was charged with a five-count indictment alleging conspiracy to rob a mail carrier, armed robbery of a mail carrier, theft and possession of stolen mail, and theft of Postal Service property. On November 1, 1990, a jury convicted Pinkney on all counts except the armed robbery count (it found him guilty of the lesser included offense of robbing a mail carrier). He was sentenced on February 4, 1991, to 52 months in prison.

### DISCUSSION

#### I. Conspiracy Conviction

Pinkney claims the evidence was insufficient to support his conviction for conspiracy to rob a mail carrier. A conviction is supported by sufficient evidence if " 'reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Bishop,* 959 F.2d 820, 829 (9th Cir.1992) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). In proving a conspiracy charge, the government must first establish the existence of a conspiracy, and then show that defendant did one or more acts in furtherance of the conspiracy's goals. *United*

States v. Penagos, 823 F.2d 346, 348 (9th Cir.1987). Once the existence of a conspiracy is established, substantial " 'evidence of only a slight connection to the conspiracy' is sufficient to convict for participation in the conspiracy." *United States v. Foster*, 985 F.2d 466, 469 (9th Cir.1993).

Pinkney argues both that the requisite meeting of the minds never took place among himself and Chris and Cheez, and that his participation did not rise to the level of "acts in furtherance" of the conspiracy. He alleges that he was not a "willing participant" in the robbery,[1] and that Chris and Cheez made all the key decisions in carrying it out. Pinkney does not deny, however, that Chris and Cheez formed a conspiracy to rob a mail carrier. He does not dispute that he knew of this conspiracy. And he does not dispute that he aided his brother and Cheez by driving Cheez to the site of the robbery, driving Cheez and the stolen mail away afterward, and helping cash the stolen checks. Whether or not he was comfortable with his part in this plan, he acted in furtherance of it. The evidence is more than sufficient to establish his participation in the conspiracy.

The cases Pinkney cites in support of his position are all readily distinguishable. In *United States v. Esparza*, 876 F.2d 1390 (9th Cir.1989), Esparza was a front-seat passenger in a Dodge van acting as the "lead vehicle" for a moving van of illegal aliens. His conviction was reversed because the government

> presented no evidence that Esparza knew of the conspiracy or that he knew that illegal aliens were hidden in the moving van ... [or] that he did anything to assist in transporting the aliens or that he agreed to assist in transporting them.

*Id.* at 1392. In a separate concurrence, Judge Sneed wrote that the government had failed to establish that Esparza was not an "innocent bystander." *Id.* at 1393.

In *Penagos*, the government offered proof of Penagos' "counter surveillance" activities in an attempt to establish that he was a lookout for the drug transaction upon which his conviction was based. Penagos was a passenger in a car with two other men during a period in which they made a cocaine purchase, and appeared to be looking up and down the street at one point. He was not present, however, during the key drug transactions at issue in the case. This court found that the government's evidence was insufficient to prove a link to the conspiracy: "defendant's behavior was perfectly consistent with that of an innocent person having no stake or interest in drug transactions." 823 F.2d at 349.

Finally, the government's proof of defendant's participation in the conspiracy was also deficient in *United States v. Lopez*, 625 F.2d 889 (9th Cir.1980). Defendant Ramon was in the passenger seat of a car containing two conspirators, one of whom had 40 ounces of heroin in her purse. As in *Esparza* and *Penagos*, this court reversed his conspiracy conviction because "mere association and activity with a conspirator does not meet the test:" the government had shown neither that Ramon had knowledge of the conspiracy, nor that he did any concrete acts in its furtherance. *Id.* at 896.

The defendants in *Esparza*, *Penagos*, and *Lopez* could plausibly be characterized as innocent passengers. Pinkney, in contrast, admits to knowing of Chris' and Cheez' plans to rob a mail carrier, to driving Cheez to the robbery, to following him in the stolen mail truck, to transporting Cheez and the stolen mail away from the scene, and to helping to cash the checks. There is simply no way to characterize Pinkney as an "innocent bystander." We affirm his conspiracy conviction.

II. *Sentencing Issues*

A. *Denial of Minor Participant Status*

 Pinkney challenges the district court's finding that he was not a minor participant in the robbery. The court found that "Mr. Pinkney [and Cheez] were, I think, equal actors in this offense." Transcript of Sentencing Hearing, February 4, 1991, at 8–9. We review this finding for clear error. *United States v. Peters*, 962 F.2d 1410, 1414 (9th Cir.1992).

---

**1.** Although, as the government points out, he did not employ a duress defense at trial.

Under the Sentencing Guidelines, the sentencing judge must grant a two-level reduction if the defendant was a "minor participant" in the crimes charged. U.S.S.G. § 3B1.2(b). A minor participant is one who is "less culpable than most other participants," *id.* at note 3, or "substantially less culpable than the average participant." *Id.* at bkgd. note; *see United States v. Andrus,* 925 F.2d 335, 338 (9th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 249, 116 L.Ed.2d 204 (1991) ("merely being less culpable than one's co-participants does not automatically result in minor status").[2]

Pinkney argues his conduct was "far less culpable" than that of his coconspirators, because Chris selected the day of the robbery, and Cheez selected the carrier to rob, and actually did the robbery. However, the fact that Pinkney did not mastermind the robbery does not automatically make him a minor participant. *Peters,* 962 F.2d at 1414–15 (woman who participated in mail fraud scheme masterminded by her husband was not entitled to minor participant status). Pinkney drove the getaway car, transported the checks to his home, and intended to benefit from cashing them. *See id.* at 1415 (receiving economic benefit considered to weigh against minor participant status).

Pinkney also claims he is "substantially less culpable than an average participant in an armed robbery." Appellant's Opening Brief, at 18. However, one kind of average participant in a robbery would be the person who drove the robber to the scene and then drove him or her away again, and expected a share of the loot. It was not clear error, in this case, for the district court to conclude that Pinkney was such a person. *Cf. United States v. Lui,* 941 F.2d 844, 849 (9th Cir. 1991) (refusing to grant minor participant status to defendant who claimed to be "mere courier").

▮ Downward adjustments for minor participant status are to be used "infrequently." *Andrus,* 925 F.2d at 337. The district court did not clearly err in refusing to grant one here.

## B. *Sentence Enhancement for Brandishing a Firearm*

▮ Pinkney challenges his sentence enhancement, pursuant to U.S.S.G. § 2B3.1(b)(2)(C), for brandishing a firearm during a robbery. We review the district court's interpretation of the Sentencing Guidelines de novo, *United States v. Blaize,* 959 F.2d 850, 851 (9th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 2954, 119 L.Ed.2d 576 (1992), and its findings of fact for clear error. *United States v. Gavilan,* 966 F.2d 530, 531 (9th Cir.1992).

Pinkney argued at sentencing that the firearm enhancement would be improper because the jury had specifically acquitted him of armed robbery. We agree. The district court was wrong for two reasons. The district court applied what it called a *"Pinkerton"* theory ("a coconspirator is responsible for the acts of all other conspirators committed in the course of the furtherance of the conspiracy"), and imposed the enhancement on Pinkney despite his acquittal. Transcript of Sentencing Hearing, February 4, 1991, at 5. Even were enhancement on a *Pinkerton* theory appropriate, the court was in error because it failed to find that Cheez' possession of a gun was known to Pinkney, or that it reasonably should have been foreseen. "[T]o the extent that [a court] dispenses with the requirement of reasonable foreseeability, it relies on an erroneous interpretation of [*Pinkerton v. United States,* 66 S.Ct. 1180, 90 L.Ed. 1489 (1946) ]." *United States v. Garcia,* 909 F.2d 1346, 1350 n. 1 (9th Cir.1990). *Garcia,* which specifically considered a sentence enhancement for a coconspirator's possession of a gun, also pointed out that the Guidelines themselves impose this foreseeability requirement. *Id.* at 1349–50 (citing U.S.S.G. § 1B1.3). Because the district court erred in imposing a form of strict liability on Pinkney for Cheez' possession of a gun, the three-level enhancement was improper.

▮ However, even if the district court were to find on remand that Pinkney should

---

**2.** The district court appeared to correctly understand this statement of the law: "I don't think just because a person is not the primary actor

doesn't mean he is entitled to a reduction either as a minor or a minimal participant." Transcript of Sentencing Hearing, at 9.

reasonably have foreseen Cheez' use of a gun, the firearm enhancement would still be inappropriate because Pinkney was acquitted of armed robbery at trial. *United States v. Brady*, 928 F.2d 844 (9th Cir.1991).

It is true, as the government points out, that ·

> conduct other than that of which a defendant was convicted may be considered in calculating the offense level . . . if it is part of the same course of conduct as the crime of conviction.

*United States v. Piper*, 918 F.2d 839, 840 (9th Cir.1990). This is not so, however, if the defendant has been acquitted of charges which embraced that very conduct. In *Brady*, this court held that an upward departure from the Guidelines may not be based on factual findings which a jury has necessarily rejected by its acquittal. 928 F.2d at 851.

The defendant in *Brady* was acquitted of first degree murder and assault with intent to commit murder, and found guilty of the lesser included offenses of voluntary manslaughter and assault with a dangerous weapon. At sentencing, the district court made a substantial upward departure based on defendant's state of mind—specifically his "intent to inflict serious injury or to kill" the victims. Given the statutory elements of the first degree murder and assault with the intent to kill charges of which he had been acquitted, however, the jury had already determined he did not have the state of mind attributed to him by the district court. This court invalidated the upward departure:

> We would pervert our system of justice if we allowed a defendant to suffer punishment for a criminal charge for which he or she was acquitted. The Guidelines recognize that voluntary manslaughter is to be punished less severely than murder by setting a lower base offense level for voluntary manslaughter than for murder. A sentencing court should not be allowed to circumvent this statutory directive by making a finding of fact—under any standard of proof—that the jury has necessarily rejected by its judgment of acquittal.

*Id.* at 851 (footnote omitted). The court noted that by its upward departure the district court had "effectively sentenced Brady for second degree murder," of which he was not convicted. *Id.* at 852.

*Brady* controls Pinkney's case.[3] *Brady* "define[d] one more category of facts that cannot be used by a district court in imposing sentence, i.e. facts that have been rejected by a jury's not guilty verdict." 928 F.2d at 851 n. 12. While we recognize that *Brady* involved an upward departure, its core rationale—that "[w]e would pervert our system of justice if we allowed a defendant to suffer punishment for a criminal charge for which he or she was acquitted,"—is equally applicable to the use of "facts that have been rejected by a jury's not guilty verdict" as a basis for enhancing a defendant's sentence. We conclude that Pinkney, having been acquitted by a jury of armed robbery, cannot be subject to an enhanced sentence under U.S.S.G. § 2B3.1(b)(2)(C).

AFFIRMED, in part, VACATED, and REMANDED.

---

**3.** The government attempts to avoid *Brady* on two grounds.

First, it argues that the standard of proof at trial is "beyond a reasonable doubt," but at sentencing the judge must employ a "preponderance of the evidence" standard. *See, e.g., United States v. Boney*, 977 F.2d 624, 647 (D.C.Cir.1992) (Randolph, J., dissenting in part and concurring in part) (noting, in this context, "the hard logic of the differing-burdens-of-proof analysis"). *Brady*, however, specifically rejected this argument. 928 F.2d at 851 & n. 12 (sentencing judge may not rely, "under any standard of proof," on facts of which defendant was acquitted).

Second, the government argues that the concern driving *Brady* was with limiting the information a sentencing court can use "in determining whether to *depart* from the Guidelines." Red Br. at 8; *Brady*, 928 F.2d at 851 (emphasis added). The *Brady* court, according to the government, was concerned that the sentencing judge had sought to "circumvent [the] statutory directive" of the Guidelines and to "avoid [their] restrictions." *Id.* The government argues that this concern is inapposite in Pinkney's case, because the district court was not *departing* from the Guidelines, but rather imposing a specific Guidelines *enhancement*, § 2B3.1(b)(2)(C). This, however, mischaracterizes the rationale in *Brady*.