UNITED STATES of America,
Plaintiff–Appellee,

v.

Cheryl PUTRA, Defendant–Appellant.

No. 94–10040.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 14, 1995.

Decided March 5, 1996.

Richard T. Pafundi, Honolulu, Hawaii, for defendant-appellant.

Pat Merkamp Stemler, United States Department of Justice, Washington, D.C., for plaintiff-appellee.

Before WALLACE, Chief Judge, HUG, and FARRIS, Circuit Judges.

HUG, Circuit Judge:

Cheryl Ann Putra was convicted of one count of aiding and abetting in the possession of one ounce of cocaine with intent to distribute. She appealed both her conviction and her sentence. In an unpublished memorandum disposition, we affirmed her conviction along with the convictions of her codefendants. *United States v. Putra*, No. 94–10040, 1996 WL 95243 (filed March 5, 1996). This opinion concerns her appeal of her sentence. Putra contends that the district court improperly considered as "relevant conduct" the cocaine involved in a separate count of which the jury acquitted her. We have jurisdiction under 28 U.S.C. § 1291, and we remand for resentencing.

## I.

Count 18 of Putra's indictment charged her with aiding and abetting in the possession with intent to distribute one ounce of cocaine on May 8, 1992. Count 19 charged her with aiding and abetting possession with intent to distribute five ounces of cocaine on May 9, 1992. In addition, she was charged in Count 2 with conspiring knowingly and intentionally to distribute a quantity of cocaine in excess of 500 grams. Following trial, the jury returned a guilty verdict on Count 18, but it acquitted her on Count 19 and Count 2. However, at sentencing, the district court determined that the preponderance of the evidence showed that Putra was involved in both of the charged aiding and abetting transactions. The court aggregated the amount of cocaine involved in Counts 18 and 19 to determine her offense level, despite the jury acquittal on Count 19. Without the added cocaine from Count 19, Putra's guideline range would have been 15–21 months; with the added cocaine included, her range was 27–33 months. The court sentenced her to 27 months.

## II.

■ The issue on appeal is whether a judge can sentence a defendant for a crime of which the jury found her not guilty. We review a district court's interpretation of the Sentencing Guidelines *de novo*. *United States v. Buenrostro–Torres*, 24 F.3d 1173,

1174 (9th Cir.1994). We conclude that the court erred by failing to apply our prior decision in *United States v. Brady*, 928 F.2d 844 (9th Cir.1991).

The court instructed the jury generally on aiding and abetting that:

> The guilt of a defendant in a criminal case may be established without proof that the defendant personally did every act constituting the offense alleged. The law recognizes that, ordinarily, anything a person can do for himself may also be accomplished by that person through direction of another person as his or her agent, or by acting in concert with, or under the direction of, another person or persons in a joint effort or enterprise.

> So, if another person is acting under the direction of the defendant or if the defendant joins another person and performs acts with the intent to commit a crime, then the law holds the defendant responsible for the acts or conduct of such other persons just as though the defendant had committed the acts or engaged in such conduct.

> Notice, however, that before any defendant may be held criminally responsible for the acts of others, it is necessary that the accused deliberately associate himself in some manner with the crime and participate in it with the intent to bring about the crime.

> Of course, mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that a defendant either directed or aided and abetted the crime unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator.

> In other words, you may not find a defendant guilty unless you find beyond a reasonable doubt that every element of the offense as defined in these instructions was committed by some person or persons, and that the defendant voluntarily participated in its commission with the intent to violate the law.

The court went on to instruct the jury on the individual offenses. Regarding the counts against Putra, the instructions read in part:

"The defendants are charged in Counts ... 18 [and] 19 ... with possession with intent to distribute cocaine." The court then set forth the elements of possession.

he jury acquitted Putra of aiding and abetting in the possession with intent to distribute the five ounces of cocaine involved in Count 19. By acquitting her of this charge, the jury necessarily found that she was not involved in the possession of that cocaine. Putra challenges the court's inclusion of the additional cocaine as improper under the Sentencing Guidelines as interpreted by our decision in *Brady*.

United States Sentencing Guideline ("U.S.S.G.") § 1B1.3(a)(2) provides that the defendant's base offense level shall be determined, with respect to offenses of a character for which U.S.S.G. § 3D1.2(d) would require grouping, on the basis of all acts and omissions described in subdivision (1)(A) and (1)(B) that were part of the same course of conduct or common scheme or plan as the offense of conviction. Subdivision (1)(A) includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." U.S.S.G. § 1B1.3(a)(1)(A). Application note 3 further states that under subsection (a)(2), the proper course is to include the total quantity of narcotics involved regardless of the fact that the defendant has not been convicted of the multiple counts. As an example, the application note provides that where a defendant is engaged in multiple drug sales, as part of the same course of conduct or common scheme or plan, then the total quantity of drugs involved is to be used to determine the offense level, even if the defendant is convicted of a single count charging only one of the sales. U.S.S.G. § 1B1.3, comment. (n. 3).

Although U.S.S.G. § 1B1.3, as interpreted by application note 3, indicates it is proper to include the total quantity of drugs involved in the same course of conduct scheme or plan even if the defendant is convicted of only one count, it does not deal with the situation where the defendant was charged with the other count involved and is acquitted. We considered this situation in an analogous con-

text in *United States v. Brady*, 928 F.2d 844 (9th Cir.1991). In *Brady*, the jury acquitted the defendant of first degree murder and assault with intent to commit murder, but it convicted him of the lesser included offense of voluntary manslaughter. At sentencing, the court reconsidered the defendant's "state of mind" and departed upward on that basis and on the degree of planning and preparation involved in the offense. *Id.* at 850. We reversed, concluding that the Guidelines do not allow "a court to reconsider facts during sentencing that have been rejected by a jury's not guilty verdict." *Id.* at 851. "Otherwise, any time a judge disagreed with the jury's verdict, the judge could 'reconsider' critical elements of the offense to avoid the restrictions of the Guidelines and push the sentence to the maximum—in effect punishing the defendant for an offense for which he or she had been acquitted." *Id.* at 851–52.

■ Likewise, this case presents a situation where allowing an increase in Putra's sentence would be effectively punishing her for an offense for which she has been acquitted. The jury's finding that Putra did not aid or abet in the possession of the five ounces of cocaine on May 9, 1992, is an explicit rejection of her involvement in that transaction. The sentencing court cannot, after the jury's determination on those facts, consider the facts again and conclude that Putra was indeed involved. Although the standard of proof differs for an acquittal and for sentencing, we have specifically rejected this argument as justification for considering facts underlying the jury's acquittal. In *Brady*, we held that a district court may not rely upon facts that have been rejected by a jury's not guilty verdict. *Id.* at 851 & n. 12. In this case, the district court's sentence can only be reached if the district court is allowed to disregard the jury verdict on Count 19 and substitute its own factual finding. This is clearly forbidden under *Brady*.

■ We note, however, that *Brady* is a judicial limitation on the facts the district court may consider at sentencing, beyond any limitation imposed by the Guidelines. Thus, our application of *Brady* to the circumstances of this case is very narrow. We acknowledge that *Brady* is itself limited by

*United States v. Vgeri*, 51 F.3d 876 (9th Cir.1995), and *United States v. Diaz–Rosas*, 13 F.3d 1305 (9th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 1848, 128 L.Ed.2d 473 (1994), cases in which the defendants were convicted of the conspiracy count, but acquitted of certain possession counts. Under such circumstances, the district court may hold a defendant accountable for drugs possessed or distributed by co-conspirators, so long as it was in furtherance to jointly undertaken criminal activity and reasonably foreseeable to the defendant. *See* U.S.S.G. § 1B1.3, comment. (n. 2). However, these cases are not applicable to the facts at hand because Putra was acquitted of the conspiracy charge and of any activity related to the cocaine involved in Count 19. In such a situation, the district court should not consider the narcotics in possession of her codefendants when setting Putra's sentence.

The Government contends that this case nonetheless fits squarely within section 1B1.3 application note 3, and that because *Brady* did not involve this section, we are not constrained by its holding. We do not agree. The jury's verdict on Count 19 under the court's instructions precludes an application of section 1B1.3 to this case because the jury's verdict rejected Putra's participation in the Count 19 transaction in all respects. U.S.S.G. § 1B1.3 requires a finding that Putra was in someway involved in the May 9 transaction to include the offense as "relevant conduct." The jury's acquittal is a finding that Putra was not involved, did not commit, did not aid or abet, and was not engaged in the May 9, 1992 transaction.

This result is not inconsistent with application note 3 to U.S.S.G. § 1B1.3. The note states that the defendant need not be convicted of multiple offenses to be sentenced based on the aggregate amount of narcotics involved. This guidance, however, is directed to uncharged conduct where a preponderance of the evidence demonstrates the defendant's involvement; it does not address acquitted conduct. To allow the court to increase Putra's sentence based on acquitted conduct would make the jury's findings of fact pointless and contradict our holding in *Brady*. Thus, the district court erred by

including the five ounces of cocaine in Count 19 to increase Putra's sentencing range.

**REVERSED and REMANDED for resentencing.**

WALLACE, Chief Judge, dissenting:

The majority starts toward the wrong answer by asking the wrong question: "whether a judge can sentence a defendant for a crime of which the jury found her not guilty." Opinion at 1387. Putra was not sentenced or punished for the May 9, 1992, crime. Rather, the district court sentenced her for the crime of which she was convicted, aiding and abetting possession with intent to distribute one ounce of cocaine on May 8, 1992. The issue before us is whether Putra's sentence for this crime may be increased because of her involvement in the May 9 transaction. In other words, the issue is whether Putra is accountable under section 1B1.3 of the 1991 United States Sentencing Guidelines for the five ounces of cocaine her codefendants possessed with intent to distribute on May 9. Because I believe the district court properly considered this amount in determining Putra's base offense level, I respectfully dissent.

Merely because a jury acquitted Putra on charges related to the May 9 drug transaction does not preclude the district court from including the amount of cocaine involved in that transaction in determining her base offense level. The majority, however, concludes that section 1B1.3 "does not deal with the situation where the defendant was charged with [an]other count involved and is acquitted [on that count]." *Id.* at 1388. The majority further states that section 1B1.3 "does not address acquitted conduct." *Id.* at 1389. Such sweeping language contradicts the Guidelines, our practice prior to enactment of the Guidelines, decisions of other circuits, and recent Supreme Court authority.

Section 1B1.3 allows a sentencing court to consider all "relevant conduct" in determining an appropriate sentencing range. Where the defendant has been charged with multiple counts grouped together pursuant to section 3D1.2(d), such as here, relevant conduct includes "all acts and omissions ... that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2).

The Application and Background Notes accompanying section 1B1.3 illustrate that the Guidelines allow sentencing courts to consider circumstances surrounding criminal activity for which a defendant was acquitted. Application Note 3 makes it clear that section 1B1.3 does not require Putra "to have been convicted of multiple counts." *Id.* at comment., n. 3. The Note provides the following example:

> [W]here the defendant engaged in three drug sales of 10, 15, and 20 grams of cocaine, as part of the same course of conduct or common scheme or plan, subsection (a)(2) provides that the total quantity of cocaine involved (45 grams) is to be used to determine the offense level even if the defendant is convicted of a single count charging only one of the sales.

*Id.* Although the Note does not explicitly state that the hypothetical defendant was charged with and acquitted of the two other sales, it is reasonable to infer that the court dismissed or the jury acquitted the defendant on those counts. Thus, the Note reasonably can be interpreted to mean that a defendant need not be convicted of criminal activity for a court to consider that activity in determining sentencing ranges. *United States v. Boney,* 977 F.2d 624, 635 (D.C.Cir.1992) (*Boney*).

More to the point is the Background Note to section 1B1.3, which explains that in determining what constitutes relevant conduct under subsection (a)(2), courts should consider "pattern[s] of misconduct" rather than convictions on specific counts because "the distinctions that the law makes as to what constitutes separate counts or offenses often turn on technical elements that are not especially meaningful for purposes of sentencing." U.S.S.G. § 1B1.3, background note. Thus, "[r]elying on the entire range of conduct, *regardless of the number of counts that are alleged or on which a conviction is obtained,* appears to be the most reasonable approach to writing workable guidelines for [offenses

falling under § 3D1.2(d) ].” *Id.* (emphasis added).

The range of conduct amounting to “acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction” under subsection (a)(2) includes acts “committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable.” *Id.* at comment., n. 2. Application Note 2 states that a defendant is “otherwise accountable” for the “conduct of others ... in furtherance, and reasonably foreseeable in connection with, [jointly undertaken] criminal activity.” *Id.*

The district court found that the government succeeded in showing, by a preponderance of the evidence, that Putra “was involve[d] in activity where it was reasonably foreseeable that additional [drug] activity would continue.” *See Witte v. United States,* — U.S. ——, ——, 115 S.Ct. 2199, 2207, 132 L.Ed.2d 351 (1995) (*Witte*) (State need not prove facts related to the severity of punishment beyond a reasonable doubt), *citing McMillan v. Pennsylvania,* 477 U.S. 79, 84, 106 S.Ct. 2411, 2415, 91 L.Ed.2d 67 (1986); *Nichols v. United States,* — U.S. ——, ——, 114 S.Ct. 1921, 1928, 128 L.Ed.2d 745 (1994) (*Nichols*) (State must prove conduct considered in sentencing by a preponderance of the evidence); *United States v. Restrepo,* 946 F.2d 654, 656 (9th Cir.1991) (en banc) (Sentencing Guidelines did not alter standard of proof required of facts related to sentencing), *cert. denied,* 503 U.S. 961, 112 S.Ct. 1564, 118 L.Ed.2d 211 (1992). The district court thus adopted paragraph 19 of the Presentence Report, which states:

> The defendant's presence during [the May 9] transaction constitutes relevant conduct pursuant to U.S.S.G. § 1B1.3(a)(2) in that codefendant Vassilios Liaskos' conduct was a reasonably foreseeable act in furtherance of a jointly undertaken criminal activity, as well as part of the same course of conduct or common scheme or plan as the offense of conviction.

This finding is not clearly erroneous. *See United States v. Karterman,* 60 F.3d 576, 580 (9th Cir.1995) (*Karterman*) (“The factual findings on which the lower court based [a sentencing] enhancement are reviewed for clear error.”); *see also United States v. Sha-*

*bani,* 48 F.3d 401, 404 (9th Cir.1995) (reviewing court should give “due deference to the district court's application of the guidelines to the facts”). The district court based its finding on (1) Putra's admission that she was in Vassilios Liaskos's car when he sold cocaine to Alexander Panos on May 9; (2) Panos's testimony that he met Putra on several occasions to purchase cocaine, including May 9; (3) testimony from Liaskos, who stated that on May 9 Putra met him only to have lunch, although he and Putra never in fact went to lunch on that day; (4) testimony from Richard Haller and Robert Blackmon, who said that Liaskos was grooming Putra to take over his drug business; and (5) evidence compiled by a surveillance team, which photographed and watched both the May 8 and May 9 transactions. These facts provide ample evidence that Putra could reasonably foresee that Liaskos would sell cocaine to Panos on May 9 in furtherance of a jointly undertaken criminal activity, and that Putra's involvement in the May 9 transaction was part of the same course of conduct or common scheme or plan as her offense of conviction. Because the district court did not clearly err in finding that Putra was accountable for the amount of drugs sold on May 9, it had authority under section 1B1.3 to include the five ounces of cocaine sold on May 9 in determining her base offense level and corresponding sentencing range.

This result is consistent with section 1B1.3 and this court's practice prior to the enactment of the Sentencing Guidelines, when a sentencing judge could consider a wide range of evidence, “in order to tailor the punishment to the criminal rather than to the crime.” *United States v. Morgan,* 595 F.2d 1134, 1136 (9th Cir.1979) (*Morgan*); *see also Nichols,* — U.S. at ——, 114 S.Ct. at 1928 (describing broad discretion traditionally exercised by sentencing courts). There is no evidence that Congress intended the Sentencing Guidelines to alter this practice.

The purpose of the Sentencing Reform Act of 1984 (Act), 18 U.S.C. §§ 3551–3742 and 28 U.S.C. §§ 991–98, “was to eliminate the ‘unwarranted disparit[ies] and ... uncertainty’ associated with indeterminate sentencing.” *Burns v. United States,* 501 U.S. 129, 133,

111 S.Ct. 2182, 2184, 115 L.Ed.2d 123 (1991) (*Burns*), quoting S.Rep. No. 98–225 at 49 (1983); *see also Mistretta v. United States,* 488 U.S. 361, 363–68, 109 S.Ct. 647, 650–53, 102 L.Ed.2d 714 (1989) (recounting the Act's background and impact on traditional sentencing practices). While the Act "revolutionized the manner in which district courts sentence persons convicted of federal crimes," *Burns,* 501 U.S. at 132, 111 S.Ct. at 2184 the revolution was one of determinancy and procedural reform only. *Id.* at 133, 111 S.Ct. at 2184–85. Such procedural reforms injected more formality into the sentencing process, but they did not remove the discretion exercised by sentencing judges prior to the enactment of the Guidelines. *Id.*; *see also* U.S.S.G. § 6A1.3, comment. (explaining that where there is a dispute over what constitutes a permissible factor, the Guidelines merely require the court to "ensure that the parties have an adequate opportunity to present relevant information," including "notify[ing] the parties of [the court's] tentative findings and afford[ing] an opportunity for correction of oversight or error before sentence is imposed"); *cf. Witte,* —— U.S. at ——, 115 S.Ct. at 2207 (Sentencing Guidelines did not alter sentencing court's discretion to consider uncharged relevant conduct).

The Guidelines' relevant conduct provision merely channeled future discretion by recognizing that an offense is more serious when it represents part of a pattern of criminal conduct. As the decisions of other circuits have recognized, relevant conduct "corresponds to those actions and circumstances that courts typically took into account when sentencing prior to the Guidelines' enactment." *United States v. Wright,* 873 F.2d 437, 441 (1st Cir. 1989); *see also United States v. Mack,* 938 F.2d 678, 681 (6th Cir.1991) (section 1B1.3 "memorializes a long standing practice of trial judges").

Pre–Guidelines practice in this court allowed judges to consider acquitted conduct in sentencing. *Morgan,* 595 F.2d at 1136; *United States v. Atkins,* 480 F.2d 1223, 1224 (9th Cir.1973). This should have ended the matter for us and resulted in a unanimous affirmance of the sentence. However, *United States v. Brady,* 928 F.2d 844 (9th Cir. 1991) (*Brady*), changed this practice, without citing any authority, and used a rationale that the Supreme Court now has discredited. Should *Brady* change our analysis?

*Brady* held that a sentencing court may not consider facts that the jury necessarily rejected by a judgment of acquittal. *Id.* at 851. The district court had upwardly departed from the Guidelines in sentencing Brady for voluntary manslaughter based on his "state of mind, and the degree of planning and preparation of [the] offenses." *Id.* at 850. Brady argued that the district court "effectively overrule[d]" the jury's verdict, which convicted him of only voluntary manslaughter, not first degree murder, thereby necessarily rejecting the fact that he had the mental state to intend murder. *Id.* Accepting this reasoning, *Brady* ruled that the district court "in effect punish[ed] the defendant for an offense for which he or she had been acquitted." *Id.* at 852. *Brady* further stated that "[w]e would pervert our system of justice if we allowed a defendant to suffer punishment for a criminal charge for which he or she was acquitted." *Id.* at 851. *Brady* explicitly rejected the reasoning adopted by most other courts of appeals—that a sentencing court may consider as relevant conduct acquitted conduct that the government proved by a preponderance of the evidence. *Id.* at 851 n. 12; *see Boney,* 977 F.2d at 635–36; *United States v. Mocciola,* 891 F.2d 13, 16–17 (1st Cir.1989); *United States v. Isom,* 886 F.2d 736, 738–39 (4th Cir.1989); *United States v. Juarez–Ortega,* 866 F.2d 747, 748–49 (5th Cir.1989); *United States v. Masters,* 978 F.2d 281, 285–87 (7th Cir.1992), cert. denied, 508 U.S. 906, 113 S.Ct. 2333, 124 L.Ed.2d 245 (1993); *United States v. Olderbak,* 961 F.2d 756, 764–65 (8th Cir.), cert. denied, 506 U.S. 959, 113 S.Ct. 422, 121 L.Ed.2d 344 (1992); *United States v. Rivera–Lopez,* 928 F.2d 372, 373 (11th Cir.1991).

Nevertheless, we have reaffirmed *Brady* several times, most recently in *United States v. Watts,* 67 F.3d 790, 796 (9th Cir.1995). *See also Karterman,* 60 F.3d at 581; *United States v. Pinkney,* 15 F.3d 825, 829 (9th Cir.1994) (*Pinkney*); *United States v. Diaz–Rosas,* 13 F.3d 1305, 1307–08 (9th Cir.), cert. denied, —— U.S. ——, 114 S.Ct. 1848, 128

L.Ed.2d 473 (1994). These decisions recognize that the "core rationale" of *Brady*—that we would "pervert our system of justice if we allowed a defendant to suffer punishment for a criminal charge for which he or she was acquitted"—is "applicable to the use of 'facts that have been rejected by a jury's not guilty verdict' as a basis for enhancing a defendant's sentence." *Pinkney*, 15 F.3d at 829, *quoting Brady*, 928 F.2d at 851.

But can we still adhere to *Brady*, or has it been undermined by subsequent Supreme Court authority? The Court recently rejected *Brady*'s reasoning in *Witte*. Although *Witte* addressed whether section 1B1.3 includes as "relevant conduct" activity for which a defendant already has been punished for purposes of double jeopardy, its reasoning is equally applicable to the issue at hand—whether section 1B1.3 may include activity for which a defendant has been acquitted. *Witte* first recognized that relevant conduct under section 1B1.3 includes all conduct "in which the defendant was engaged and not just with regard to the conduct underlying the offense of conviction." *Witte*, —— U.S. at ——, 115 S.Ct. at 2203. The Court then reaffirmed that sentencing courts traditionally had discretion to consider a defendant's past criminal behavior, "even if no conviction resulted from that behavior." *Id.* at ——, 115 S.Ct. at 2205, *quoting Nichols*, —— U.S. at ——, 114 S.Ct. at 1928. Finally, the Court stated that "consideration of information about the defendant's character and conduct at sentencing *does not result in 'punishment' for any offense other than the one of which the defendant was convicted.*" *Witte*, —— U.S. at ——, 115 S.Ct. at 2207 (emphasis added). The Court continued:

To the extent that the Guidelines aggravate punishment for related conduct outside the elements of the crime on the theory that such conduct bears on the "character of the offense," the offender is still punished only for the fact that the *present* offense was carried out in a manner that warrants increased punishment, not for a *different* offense (which that related conduct may or may not constitute). But, while relevant conduct thus may relate to the severity of the particular crime, the commission of multiple offenses in the same course of conduct also necessarily provides important evidence that the character of the offender requires special punishment.

. . . .

The relevant conduct provisions of the Sentencing Guidelines ... are sentencing enhancement regimes evincing the judgment that a particular offense should receive a more serious sentence within the authorized range if it was either accompanied by or preceded by additional criminal activity.... We hold that, where the legislature has authorized such a particular punishment range for a given crime, the resulting sentence within that range constitutes punishment only for the offense of conviction.

*Id.* at —— – ——, 115 S.Ct. at 2207–08 (emphasis in original).

The district court's sentence punishes Putra only for aiding and abetting possession with intent to distribute one ounce of cocaine. The court stated that it considered evidence concerning the May 9 transaction "to show other related acts, other similar acts which doesn't punish the person for those acts but just shows that [Putra] should be punished more for the act for which the jury did find her guilty." The district court's finding that her involvement in the May 9 transaction constitutes "relevant conduct" is supported by a preponderance of the evidence, and cannot be held to be clearly erroneous. Furthermore, its imposition of a 27–month sentence falls well within the statutory limit of 20 years. *See* 21 U.S.C. § 841(b)(1)(C). Thus, the district court properly determined Putra's offense level by aggregating the cocaine involved in the May 8 and May 9 transactions. Because the sentence is fully consistent with *Witte*, I would affirm the district court. *Brady* must not be considered as continuing circuit authority in light of *Witte*.

But even if *Brady* still controlled following *Witte*, the district court's sentence should be upheld under *Karterman*, which held *Brady*'s holding was narrow. Karterman was convicted of filing false tax returns and acquitted of conspiring to distribute cocaine

and distribution of cocaine. The district court nevertheless adjusted his base offense level upward two levels for failing to report income exceeding $10,000 that came from criminal activity. *Karterman,* 60 F.3d at 578. Karterman argued that, because the jury necessarily found that he did not distribute or conspire to distribute cocaine, *Brady* barred the upward adjustment. We rejected this argument because "we [could not] tell what facts or evidence the jury rejected when it acquitted Karterman on [the drug conspiracy and distribution counts]." *Id.* at 581. Because "the jury might have accepted all the evidence of Karterman's drug distribution activity but acquitted him of conspiracy because it rejected the evidence that Karterman had an agreement with another ... the jury did not *necessarily* reject Karterman's involvement in the substantive conduct underlying the conspiracy charge—*i.e.,* drug trafficking." *Id.* (emphasis in original). Thus, we held that the district court could "consider[ ], for sentencing purposes, [ ] conduct that was not charged *or was not proven at trial.*" *Id.* at 582 (emphasis added). "[A] narrow interpretation [of *Brady* ] is most consistent with the policy goals of the Guidelines," which "generally permit a sentencing judge to consider evidence of conduct that was not proven beyond a reasonable doubt at trial." *Id.* at 581.

This case is similar to *Karterman* in that we cannot tell what facts the jury necessarily rejected in acquitting Putra of aiding and abetting possession with intent to distribute five ounces of cocaine on May 9. The majority is plainly wrong in stating that "[t]he jury's acquittal is a finding that Putra was not involved, did not commit, did not aid or abet, and was not engaged in the May 9, 1992 transaction." Opinion at 1389. Let me explain why.

First, it is undisputably true that an acquittal is not a finding of any fact. An acquittal can only be an acknowledgment that the government failed to prove an essential element of the offense beyond a reasonable doubt. Without specific jury findings, no one can logically or realistically draw any factual finding inferences, including the majority.

In addition, to hold Putra accountable under section 1B1.3, the district court need only find, by a preponderance of the evidence, that she committed acts that were part of the same course of conduct or common scheme or plan as the offense of conviction. Such acts may include "conduct of others in furtherance of the execution of [a] jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." U.S.S.G. § 1B1.3, comment., n. 1. There is ample evidence that allowed the district court to find that Putra either committed acts that were part of the same course of conduct or common scheme or plan as the possession with intent to distribute cocaine on May 8; or engaged in jointly undertaken criminal activity that made the May 9 transaction reasonably foreseeable to her. For example, Putra's presence at the May 9 transaction supported Haller and Blackmon's testimony that Liaskos was grooming Putra to take over his operation, thereby providing evidence that Putra reasonably could foresee the May 9 transaction.

This is not necessarily inconsistent with the jury's acquittal of Putra for aiding and abetting in the possession with intent to distribute cocaine on May 9 or for conspiring to distribute a quantity of cocaine in excess of 500 grams. The jury could have acquitted Putra on the aiding and abetting charge because it found that the government failed to prove she did not intend to commit a crime on May 9. *See* opinion at 1388 (restating jury instructions on aiding and abetting charge). Further, the jury could have acquitted her of the conspiracy count because it found that she conspired to distribute less than 500 grams of cocaine. Neither of these possible determinations precludes the district court from finding that Putra was sufficiently involved in the May 9 transaction to consider the five ounces of cocaine sold on that day in determining her base offense level. *See Karterman,* 60 F.3d at 581 (necessarily rejected facts under *Brady* do not include "facts that were 'possibly rejected' or even 'probably rejected' "). Thus, even if *Brady* is still good law, we should affirm the district court's sentence.