IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———

No. 00-40277

———

UNITED STATES OF AMERICA

Plaintiff-Appellee,

v.

DAVID DOCKENS, JR.,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas, Corpus Christi
C-99-CR-291-1

April 19, 2001

Before, KING, Chief Judge, ALDISERT[*] and BENAVIDES. Circuit Judges.

PER CURIAM:[**]

Appellant David Dockens, Jr. was convicted of aiding and abetting the possession with

intent to distribute marijuana and conspiracy to possess marijuana with intent to distribute. The

primary issue for decision is whether the district court erred in increasing his base offense level for

obstruction of justice. He challenges also his conviction and sentence, arguing that the court

———

[*] Circuit Judge of the Third Circuit, sitting by designation.

[**] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5th Cir. R.
47.5.4.

erred in removing his counsel for a conflict of interest and in relying on the Presentence Report ("PSR") to increase his sentence. He contends also that he was denied his Sixth Amendment right to effective assistance of counsel because his attorney failed to object to certain testimony at trial. We agree that the court erred in increasing the sentence for obstruction of justice, and we remand for re-sentencing. In all other respects, we affirm the judgment of the district court.

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. This court has jurisdiction of an appeal from a final judgment of conviction and sentence under 28 U.S.C. § 1291. The appeal was timely filed. Rule 4(b), Federal Rules of Appellate Procedure.

Because we are writing for the parties who are familiar with the facts and procedural history, we will discuss only the legal issues presented for decision.

## I.

A district court's disqualification of a defense attorney is reviewed for an abuse of discretion. United States v. Sotelo, 97 F.3d 782, 791 (5th Cir. 1996). Factual determinations at sentencing are reviewed for clear error; decisions based on legal conclusions are subject to de novo review. United States v. Causey, 185 F.3d 407, 420 (5th Cir. 1999), cert. denied, 120 S. Ct. 2747 (2000). A claim of ineffective assistance of counsel is a mixed question of law and fact subject to de novo review. Crane v. Johnson, 178 F.3d 309, 312 (5th Cir. 1999).

The court acted within its authority in disqualifying Appellant's counsel because he was a member of the firm that formerly represented Appellant's co-conspirator, who was a Government witness. This presents serious potential for a conflict of interest and is a valid reason for disqualification. "The Sixth Amendment protects an accused person's right to select and be represented by his preferred attorney, although the essential aim of the amendment is to guarantee

an effective advocate for each defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Sotelo, 97 F.3d at 791 (citing Wheat v. United States, 486 U.S. 153, 159 (1988)).  In Wheat, the Court wrote:

> The District Court must recognize a presumption in favor of petitioner's counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict.  The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court.

486 U.S. at 164 (emphasis added).

The court held a hearing regarding the disqualification of Appellant's attorney, Michael Lamson.  Beginning January 1, 1999, Lamson joined Paul Looney's practice to form Looney & Lamson.  In the previous year, Looney had represented Jason Arntfield, a principal witness for the prosecution.  Looney's representation ended sometime in 1998, prior to the formation of the firm. Lamson subsequently began representing Appellant.  According to both Lamson and Looney, the two built a "Chinese firewall" and did not discuss the case or share any confidential information. After the hearing, the court disqualified Lamson from representing Appellant.

Appellant cites United States v. Medina, 161 F.3d 867 (5th Cir. 1998), cert. denied, 526 U.S. 1043 (1999), in support of his argument that the district court erred in disqualifying his counsel of choice.  In Medina, under similar circumstances involving two members of a law office representing adverse parties, the court found that no actual conflict existed.  Id. at 870-871. The teachings of  Medina are not persuasive, however, because that case was reviewing the denial of defense counsel's motion to withdraw based on a conflict of interest.  Id.  In doing so, the court first had to decide whether an actual conflict of interest existed.  Id.  In contrast, when reviewing a motion to disqualify an attorney based on a conflict of interest, an actual conflict need not be

3

shown; a serious potential for conflict is sufficient grounds for disqualification. Wheat, 486 U.S. at 164.

In the case at bar, the court determined that Lamson had a conflict of interest because his partner, Looney, had previously represented Arntfield, a Government witness against Appellant. The court noted that Lamson would be obligated to attack Arntfield's credibility, potentially affecting Arntfield's ability to obtain concessions at sentencing, which was still pending. In addition, there had been an allegation that Looney had attempted to keep Arntfield from cooperating with the Government. If that information came out at trial, it would reflect badly by association on Lamson and would adversely affect Appellant. The court concluded that it made no difference that Lamson was not associated with Looney at the time that Looney represented Arntfield because if one member of a firm is disqualified, the entire firm is disqualified.

The district court's determination that because Looney would have been disqualified, that disqualification extended to his partner, Lamson, is supported by the applicable rules of professional conduct. The rules provide that if a lawyer is prohibited from representing a particular client based on a conflict of interest, such prohibition is generally imputed to all lawyers associated with that lawyer. TEXAS RULES OF PROF'L CONDUCT R. 1.09(a)(3), (b) (2001); MODEL RULES OF PROF'L CONDUCT R. 1.10(a) (1999).

## II.

Appellant argues that his defense attorney did not provide effective assistance of counsel because he failed to object when the Government elicited testimony touching upon his choice of counsel and his counsel's subsequent disqualification. Appellant alleges that this evidence was not relevant and was highly prejudicial, thus preventing him from receiving a fair trial.

Ordinarily, this court will not entertain claims of ineffective assistance of counsel on direct appeal unless they first have been raised in the district court. United States v. Bounds, 943 F.2d 541, 544 (5th Cir. 1991). The rationale behind this rule is that "[u]nless the district court has developed a record on the defendant's allegations, [this court] cannot fairly evaluate the merits of the claim." Id. This court has "occasionally resolved claims of inadequate representation, but only when the record has provided substantial details about the attorney's conduct." Id.

We conclude that there is sufficient evidence on the record to determine the merits of this claim. To prevail on an ineffective assistance of counsel claim, a defendant must show: (1) that his counsel's assistance was deficient and (2) that the deficiency prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). The deficiency prong requires the defendant to show that his "counsel's representation fell below an objective standard of reasonableness." Id. at 688. Under the prejudice prong, the defendant must establish that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different, and that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable. Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).

According to Appellant, testimony by Looney that Appellant initially went to Looney for representation, subsequently hired Looney's partner, Lamson, and that Lamson was later disqualified, should have been objected to by his attorney. He contends that his attorney's failure to object to this testimony constituted ineffective assistance of counsel because (1) the fact that a defendant chooses a particular attorney is not proof of guilt, and (2) the fact that Lamson had been disqualified was confusing to the jury and may have had a prejudicial effect.

5

There is no evidence as to the reasons for counsel's failure to object to the disputed evidence, if it is assumed that the evidence was objectionable. Counsel, however, may have had tactical reasons for not objecting that would negate a finding of deficient performance. See Strickland, 466 U.S. at 689 (noting that courts presume that the challenged action of counsel might be considered sound trial strategy). If the evidence was admissible, then counsel's failure to object to it would not constitute deficient performance. See Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990) (holding that in the context of an ineffective-assistance of counsel claim, counsel is not required to make futile motions or objections). However, this court need not address admissibility because Appellant has failed to demonstrate that he was prejudiced by the testimony.

Although the record may be insufficient to assess Strickland's first prong, it is sufficient to assess the second prong -- the prejudicial effect of counsel's actions -- even if those actions are assumed *arguendo* to be deficient. The evidence regarding Looney's representation of Appellant and Lamson's representation of Arntfield played a role in the Government's theory of the case. Nevertheless, even without the testimony from Looney, the evidence was more than sufficient to support a guilty verdict. Arntfield testified that Appellant hired him to transport the marijuana. The truck containing the marijuana belonged to Appellant. Appellant lied to two FBI agents about whether he had ever been to Rio Grande City. Even if counsel should have objected to Looney's testimony, Appellant has not demonstrated a reasonable probability that the jury would not have convicted him absent counsel's error or that counsel's error rendered the proceedings unfair or the result unreliable. See Lockhart, 506 U.S. at 372. Accordingly, we are satisfied that Appellant may not prevail on his ineffective assistance of counsel claim.

III.

6

Appellant argues that the district court erred when it increased his sentence by two levels under Sentencing Guideline § 3C1.1 for obstructing justice. The guideline states:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

The obstruction recommendation in the PSR was based on the allegation that Appellant paid Looney to represent Arntfield in an attempt to dissuade Arntfield from cooperating with law enforcement officials. PSR ¶ 7. Appellant objected. At the sentencing hearing, portions of Arntfield's and Looney's trial testimony was replayed. According to Arntfield, Appellant said he would "take care" of things and took him to meet Looney. R. 7, 17. Arntfield denied paying Looney, but said that Looney had him sign a form for tax purposes indicating that Arntfield paid him. Id. According to Arntfield, he wanted to debrief with the Government, but Looney and his associate, Clay Conrad, told him he would be debriefed after sentencing. Id. at 18. Looney testified that he did not recall that Appellant accompanied Arntfield on his first visit and denied knowing Appellant prior to representing Arntfield. Id. at 36-37. He testified that Arntfield paid $7,000 of the total fee. Id. at 39-40. He denied telling Arntfield to lie. Id. at 43.

At the close of the hearing, the following colloquy took place:

> THE COURT: Here is where I'm proceeding on both of these issues, so you'll know what I'm thinking. Basically, we have two persons testifying to this issue of who was doing what for whom with respect to legal services. My view of it, as it stands right now, Mr. Ervin, is that were I deciding the case without the benefit of the jury's decision, I don't think I would be able to decide it in favor of the Government, and I would decide it in the favor of the defense. If it were simply outside of the context of what one person says against another without some corroboration, that's a very difficult thing to do. But that's not the way the case comes to me. The case comes to me for sentencing in the context of a jury verdict that found your client guilty beyond a reasonable doubt. And in doing so, the Government presented the testimony of Mr. Arntfield, which was critical to

7

the Government's case, and was able to establish his credibility to the satisfaction of the jury.

Part of the evidence in the case, and I think an important part in understanding the case, was the issue of Dockens obtaining counsel for Mr. Arntfield, because that implies to the jury guilty knowledge and an attempt to cover up his tracks. And I think when the jury came back with a guilty verdict, they bought into the Government's theory of the case, and they bought the testimony of the Government's witnesses to such extent that the matter has been established by a jury.

\*     \*     \*     \*

Another thing that does not speak well for Looney's credibility was his appearance before the jury. I'm sure that the jury did not share the – at least I don't think the jury shared, by looking at the verdict, Mr. Looney's version of what happened and what was happening, because that was all part of it, too. And as they were putting it all together, I think that's how I would honor this jury verdict and award the points as proposed by the Probation Department. So if you'd like to –

MR. ERVIN: Well, yes, sir. I understand. <u>The first thing is that the jury wasn't called upon to decide whether or not Mr. Dockens told Mr. Looney to tell Mr. Arntfield to be quiet about his identity.</u>

THE COURT: I don't know that they – I don't believe they could have decided the case in favor of the Government without believing Arntfield in connection with this matter, because if it's demonstrated to the Government that Arntfield is lying with respect to Dockens and counsel, then he doesn't have any credibility left with respect to anything else he's said.

R. 7, 58-60 (emphasis added).

Although factual determinations at sentencing are reviewed for clear error, it appears that the district court based its decision on a legal conclusion that it was bound by the jury's verdict, which would be subject to de novo review. See <u>United States v. Causey</u>, 185 F.3d 407, 420 (5th Cir. 1999), <u>cert. denied</u>, 120 S. Ct. 2747 (2000). According to Appellant, the district court erred in determining that the jury necessarily believed Arntfield's testimony that Appellant and Looney attempted to silence Arntfield. As Appellant points out, the jury was not asked expressly to determine, nor did it determine, whether Appellant acted to obstruct justice. Rather, the jury

8

simply concluded that Appellant was guilty of the drug conspiracy charges. R. 1, 83. The jury was free to believe or disbelieve any or all of Arntfield's testimony. Appellant argues that a general verdict does not evidence any particular factual findings by the jury. See United States v. Watts, 519 U.S. 148, 155 (1997) (holding that judgment of acquittal demonstrates only that Government did not carry its burden of proof; it does not establish that the jury necessarily rejected any facts). According to Appellant, a judge is not bound by the jury's general verdict in making factual findings.

The Government elicited testimony regarding Appellant's alleged hiring of Looney to represent Arntfield, but the jury was not required to find that Appellant did so in order to find him guilty. The judge opined that the jury necessarily had to believe Arntfield completely, including his testimony that Appellant hired Looney to keep Arntfield quiet. As the district court instructed, the jury was free to accept all or part of Arntfield's testimony, see 5th Cir. Criminal Pattern Jury Instructions 1.08; R. 6, 120-121, and any opinion as to which parts of the testimony the jury accepted is purely speculative. The United States Sentencing Guidelines anticipate that trial court judges will exercise their own judgment in sentencing, except for those factors that must be determined by a jury beyond a reasonable doubt. See Apprendi v. New Jersey, 120 S. Ct. 2348, 2363 (2000). A sentencing enhancement for obstruction of justice may be assessed when the trial court believes there is sufficiently reliable evidence available to justify the enhancement. U.S. SENTENCING GUIDELINES MANUAL § 6A1.3, cmt. (2000). Appellant argues that there is no evidence that Appellant sought Looney's assistance in "silencing" Arntfield. Arntfield never testified that he heard Appellant make any such requests of Looney. Even if Arntfield's testimony on this issue was believed, all he testified to concerning the relationship between Appellant and

9

Looney is that the Appellant paid Looney's fee. At the sentencing in this case, the district court indicated in the colloquy quoted above, that it did not believe that the evidence was sufficient to find that Appellant had obstructed justice. See R. 7, 58-60. Yet, the court deferred to what it thought the jury did or did not believe with respect to this issue when it returned a general guilty verdict. Id. The court implied that it was bound by the jury's guilty verdict and that it needed to award the two-level increase in order to "honor this jury verdict." Id.

The court's belief that a general guilty verdict mandated a finding of obstruction of justice is not consistent with case law concerning the role of a jury verdict and the court's discretion at sentencing. In Watts, the Court referred to the dissenting opinion in United States v. Putra, 78 F.3d 1386, 1394 (9th Cir. 1996) for the proposition that it is impossible to know exactly why a jury found a defendant not guilty on a certain charge:

> [A]n acquittal is not a finding of any fact. An acquittal can only be an acknowledgment that the government failed to prove an essential element of the offense beyond a reasonable doubt. Without specific jury findings, no one can logically or realistically draw any factual finding inferences . . . .

519 U.S. 148, 155 (1997) (quoting Putra, 78 F.3d at 1394 (Wallace, J., dissenting)). The Court went on to state: "[T]he jury cannot be said to have 'necessarily rejected' any facts when it returns a general verdict of not guilty." Watts, 519 U.S. at 155 (citation omitted). Similarly, a general verdict of guilty only establishes the elements of the charged offenses beyond a reasonable doubt. Appellant was not charged with obstruction of justice; therefore, without a specific jury finding, we may not logically or realistically draw any factual finding inferences regarding this issue from a general guilty verdict.

Accordingly, we hold that augmenting the sentence for obstruction of justice was error, and we will vacate the sentence and remand for re-sentencing. In the view we take, it is not

10

necessary to meet Appellant's contention that the district court erred in relying on the PSR to determine that he obstructed justice.

The sentence is vacated and the proceedings remanded in accordance with the foregoing. In all other respects the judgment of the district court is affirmed

AFFIRMED in part, SENTENCE vacated.